Hillsborough, }
May 1, 1917. }

WHITE MOUNTAIN FREEZER COMPANY  *v.*  EUGENE L. MURPHY, & a.

THE WILLIAM HIGHTON & SONS COMPANY  *v.*  SAME.

NASHUA COÖPERATIVE IRON FOUNDRY COMPANY  *v.*  SAME.

FLATHER FOUNDRY COMPANY  *v.*  SAME.

Prior to Laws 1917, *c.* 142, *s.* 1 testimony given before the labor commissioner was not privileged and might be admissible in a subsequent judicial proceeding.

The powers and duties of the labor commissioner under Laws 1911, *c.* 198, *s.* 3; Laws 1913, *c.* 186, *s.* 1 confer upon him no personal exemption from testifying as to matters which have occurred before him.

Any interference with the lawful business of another, as by a strike to enforce a closed shop, is unlawful and actionable unless a justification be proved; such interference is *prima facie* actionable, and, if established by the plaintiff's evidence on a bill to enjoin it, the defendants must justify their action and the bill will not be dismissed on a motion based solely on the ground that the plaintiff's evidence does not establish that the interference was unjustifiable.

BILLS IN EQUITY, for injunctions.  The bills allege that the plaintiffs are manufacturers of machinery at Nashua, employing a large number of persons, many of whom are moulders; that the defendants are officers and members of a voluntary unincorporated association known as International Moulders Union of North America, Local, No. 257; that on or about October 11, 1916, the defendants demanded that the plaintiffs compel all their moulders not members of said Local, No. 257, to join the same and that thereafter only members of such union should be employed by the plaintiffs, who should thereafter conduct a "closed shop" where only members of the union would be employed; that the plaintiffs refused to accede to these demands and informed the defendants that they would at all times thereafter conduct an "open shop" making no discrimination in the employment of persons because of their membership in the union or otherwise; that thereupon the defendants conspiring together to injure and ruin the plaintiffs' business in pursuance of such conspiracy induced and ordered the plaintiffs' employees to enter upon a strike against them for the purpose of compelling them to accede to their demands; that said strike is now in progress and is being maintained for such purpose; that since said October 11,

1916, the defendants by themselves and others have threatened, intimidated and annoyed the plaintiffs' employees for the purpose of inducing and compelling them to join said union, have picketed and caused others to picket plaintiffs' factory for the purpose of annoying and intimidating their employees.

The cases were sent to a master for the finding of facts. In the course of the hearing certain evidentiary questions arose which the presiding justice was requested to pass upon. The issue on trial was the object of the strike. Eugene L. Murphy, called as a witness by the plaintiffs, testified that he was the business agent of the International Moulders Union of North America and, as such, represented the members of the local union in relation to the strike; that he represented the men after they struck, that he called the attention of the labor commissioner to the fact that a labor controversy existed at Nashua and in consequence thereof the labor commissioner called him and the plaintiffs together for a general conference. The court ruled, subject to exception, that the witness should answer inquiries as to admissions made by him to the labor commissioner and to the plaintiffs as to the object of the strike. Mr. Davie, the labor commissioner, also called as a witness by the plaintiffs, testified that he had had some correspondence with Murphy in reference to the controversy and that shortly before October 27, 1916, he received a communication from him but declined to produce it or to answer the question whether at an interview before him between Murphy and the plaintiffs, the plaintiffs requested of Murphy a statement in writing as to the demands of the union.

The defendants objected to these questions and the witness declined to answer upon the ground that the conference between him as labor commissioner and the parties was of a confidential nature. The court ruled in reliance upon *Hale* v. *Wyatt*, 78 N. H. 214, that as a *quasi* judicial officer, the commissioner could not be required to answer and the plaintiffs excepted.

The plaintiffs claimed and asked the court to rule that if it should be established that the defendants combined to bring about a strike in the plaintiffs' shops for the purpose of compelling the plaintiffs to employ only union men in their shops and the strike was inaugurated for that purpose, the facts stated would constitute a conspiracy as matter of law. The court ruled otherwise and the plaintiffs excepted. The case adds, "Assuming the facts upon which this ruling is made to have been established, the court could not find therefrom that the defendants' conduct was unreasonable."

The court was asked to rule before trial that "all organized picketing,—that is, picketing by order of the International Moulders Union, by twos, who parade the streets, observe who are entering and leaving the plaintiffs' shops in order that they may argue and persuade them to join the strike is unlawful." The court declined so to rule and the plaintiffs excepted. The case was transferred from the September term, 1916, of the superior court upon the foregoing rulings by *Pike,* C. J. in advance of a trial upon the ground that the advance decision of these questions might shorten or avoid a trial of the facts.

*Joseph J. Feely* and *Herbert A. Baker* (both of Massachusetts), and *John R. Spring* and *Ivory C. Eaton* (*Mr. Feely* orally), for the plaintiffs.

*Frederick W. Mansfield* (of Massachusetts), and *William H. Barry* (*Mr. Mansfield* orally), for the defendants.

PARSONS, C. J. The defendant, Murphy, called as a witness by the plaintiffs, testified that he represented the other defendants after the strike and was inquired of as to statements made by him as to the object of the strike both during a conference between the parties before the labor commissioner and at other times. To the ruling requiring the witness to answer, the defendants excepted. Murphy, though a party, was a competent witness and could be required to testify. *Whitcher* v. *Davis,* 70 N. H. 237. He could not of course be required to give testimony tending to incriminate himself, to detail an offer of compromise or disclose privileged communications. But it does not appear that the questions asked him had such tendency. There is no evidence of an offer of compromise by either party. If there had been, an admission of an independent fact like that inquired about, the object of the strike, would be competent. *Colburn* v. *Groton,* 66 N. H. 151, 156. The defendants contend that as matter of public policy all communications to the labor commissioner should be privileged. This is matter for the legislature. The statutes on the subject in force at the time contain no such provision but on the other hand indicate a legislative belief that the public good demands publicity rather than secrecy as to the controversies which the office was designed to adjust. Laws 1911, *c.* 198, *ss.* 3–8; Laws 1913, *c.* 186, *ss.* 3, 4.

Since the argument of this case the legislature has amended *s.*

4 of *c.* 198, Laws 1911, renumbered by *s.* 1, *c.* 186, Laws 1913, by adding at the close, "neither the proceedings nor any part thereof before the labor commissioner by virtue of this section shall be received in evidence for any purpose in any judicial proceeding before any other court or tribunal whatever." This amendment was adopted April 10, 1917. Laws 1917, *c.* 142, *s.* 1. Section 4, referred to, prescribes the duty of the commissioner, "Whenever any controversy or difference arises relating to the conditions of employment or rates of wages between any employer . . . and his . . . employees." Section 7 of the same act relates to his action when he has knowledge a strike is threatened or has occurred. Whether the matters inquired about arose in proceedings under section seven or section four; whether the amendment applies to proceedings under seven as well as under four and whether the amendment will be applicable in further proceedings in this suit, pending when the legislation was adopted (*Rich* v. *Flanders*, 39 N. H. 304; *Kent* v. *Grant*, 53 N. H. 576), are questions which were not presented when the case was argued and which therefore are not now considered.

The labor commissioner did not put his objection to testifying upon the ground that he was judge of a court but upon the ground that the communications made to him were privileged. If the witness was a judge called to testify as to proceedings before him that fact did not render his testimony incompetent, *Hale* v. *Wyatt*, 78 N. H. 214, and as the court had already ruled the matter inquired about was not privileged the defendants' objection to the questions should have been overruled. The court suggested that, if the commissioner objected, he could not be compelled to testify because he was a *quasi* judicial officer. This suggestion was made in reliance upon the decision in *Hale* v. *Wyatt, supra.* The office of labor commissioner was created in 1893. The duties of the office as then defined were "to collect, assort, arrange, and present in annual reports . . . statistical details relating to all departments of labor in the state." Laws 1893, *c.* 48, *s.* 5. By the legislation of 1911 additional duties of investigation, prosecution, advice and persuasion and report are imposed upon the commissioner. He is not to hear and decide controversies between employers and employees but to endeavor to bring about an amicable adjustment, and, failing that, to induce the parties to submit the dispute to arbitrators or to the state board of conciliation and arbitration substituted two years later for the board of arbitrators. In case of failure to

secure such reference in case of a strike, he is to investigate the causes of the controversy, ascertain which party is mainly responsible and make and publish a report assigning such responsibility. But there is no suggestion such investigation is to be a judicial one. No machinery is provided for a judicial proceeding. The only trace of judicial action is found in the provisions of section 3 requiring him to hear all parties and advise them in certain circumstances what, if anything, ought to be conceded by either or both. Laws 1911, c. 198, s. 3; Laws 1913, c. 186, s. 1. While it may well be that the duty of conciliation imposed upon the commissioner can be better performed, as the legislature now seem to think, if some or all communications to or before him are held privileged, the commissioner cannot claim the privilege of exemption as a witness in view of the numerous other duties imposed on him, unless at the time about which inquiry is sought of him, he was engaged in a purely judicial duty. It does not appear that the information sought of him in the present case was obtained by him while acting in such a capacity, and it is clear that judicial power which would excuse him from appearing as a witness has not been given to him.

In *Hale* v. *Wyatt*, 78 N. H. 214, the judge of probate was called and testified upon appeal as to statements made in a hearing before him. The question was as to the competency of the evidence, which was decided in the affirmative. What circumstances would justify a judge in refusing to testify to matters which occurred at a trial before him, there was no occasion to discuss. The point was not presented. "A *judge* of a superior court seems to have been regarded as exempt from attendance at common law." 4 Wig. Ev., s. 2372 (3). While it is stated generally in the text books and in some cases that a judge of a court of record cannot be required to testify as to matters occurring before him in court (1 Gr. Ev. (16th ed.) s. 254(c), *Welcome* v. *Batchelder*, 23 Me. 85), the right does not appear to have often deprived the triers of the benefit of such knowledge. The duty rests upon every citizen to disclose, when called upon, facts within his knowledge essential to the administration of justice. *Boston & Maine R. R.* v. *State*, 75 N. H. 513, 516. Judges are not exempt from the performance of this duty and as a class are necessarily impressed with its importance. If such privilege exists, it has been honored by breach rather than observance. In *Regina* v. *Gazard*, 8 Car. & P. 595, in 1838, the grand jury were advised by Mr. Justice Patteson not to examine against his objection the chairman of the court of quarter sessions as to testimony

in a case before him, the justice remarking that the proposed witness was "president of a court of record, and it would be dangerous to allow such an examination, as the judges of England might be called upon to state what occurred before them in Court." Unless *Regina* v. *Harvey*, 8 Cox Cr. Cas. 99, 103, and *Anon.*, 24 Solicitors' Journal 398, cited by Wigmore, are exceptions, the case in 8 Car. & P. is the only one found in which the judge's testimony was not produced. In 1872, in the house of lords, the question being as to the admissibility of the testimony of an arbitrator in explanation of an award, Baron Cleasby said: "First with regard to the competency of the umpire as a witness, I am not aware of any real objection to it. With respect to those who fill the office of Judge it has been felt that there are grave objections to their conduct being made the subject of cross examination and comment (to which hardly any limit could be put) in relation to proceedings before them; and, as everything which they can properly prove can be proved by others, the Courts of law discountenance, and I think I may say prevent them being examined." *Buccleuch* v. *Metropolitan B'd of Works*, L. R. 5 H. L. 418, 433. The privilege appears to be confined to judges of courts of record. This must necessarily be so, for, if there is no recording officer but the judge or *quasi* judicial officer himself, proceedings before him can be proved only by calling him as a witness. In *Regina* v. *Harvey*, 8 Cox Cr. Cas. 103, although *Byles*, J. said he should refuse to appear if subpoenaed to produce his minutes of testimony, he added, "The same objection was not applicable to the judges of the inferior courts." 4 Wig. Ev., s. 2372. If the labor commissioner had claimed to be excused on the ground of privilege, such claim should have been overruled.

Certain other questions were then mooted, bearing upon the maintenance of the proceeding, upon which the court ruled subject to exception. These exceptions are also transferred with the suggestion that their determination in advance of a trial may shorten or avoid the hearing upon the facts. This procedure is one often employed when justice and convenience require, but it is not the practice to consider difficult questions of law which may not arise when the facts are found. *Glover* v. *Baker*, 76 N. H. 201, 203. Questions considered in this way are, ordinarily, important ones necessarily involved in the action. *Hampton Beach Co.* v. *Hampton*, 77 N. H. 373. It is not the duty of the court under the guise of this procedure to advise the parties in advance as to their rights under all possible facts which might be proved. As suggested, the allega-

tions of the bill seem to be regarded as sufficient while the requests to rule amount to an inquiry whether the plaintiffs may not recover upon proof of much less than they have alleged. In this situation the views of the court are properly expressed only upon the precise questions raised by exception. Two questions were raised.

1. The court was asked to rule that if the defendants combined to bring about a strike in the plaintiffs' shops and the strike was accordingly inaugurated for the object of thereby compelling the plaintiffs to employ only union men, such action would constitute a conspiracy as matter of law. The court declined to so rule and the plaintiffs excepted. The court then stated that he could not find from these facts that the defendants' conduct was unreasonable. It does not appear whether this statement was intended as a finding of fact or as a ruling of law. No exception is reported and no question is transferred upon this statement. The plaintiffs' present contention is that a combination for the purpose of compelling them to employ only union men in their shops is unlawful and constitutes a conspiracy as matter of law. This appears to be the first controversy of this character in this jurisdiction, but the defendants claim that *Huskie* v. *Griffin,* 75 N. H. 345, is decisive of the question now under consideration. There was no question of combination in *Huskie* v. *Griffin.* The acts of a single individual were under consideration. But an act unlawful for one to do is not made lawful because done by a combination. If the defendants have undertaken by combination or otherwise to compel the plaintiffs to employ only certain individuals or a certain class in their shops, they have interfered with a right of the plaintiffs, said in *Huskie* v. *Griffin* to be "inherent in the idea of Anglo-Saxon liberty," the right to freely deal or refuse to deal with others; "*prima facie* a man can demand an open market." *Huskie* v. *Griffin, supra, pp.* 347, 350. The defendants concede the interference; they say in their brief: "a strike to enforce a 'closed shop' may be unlawful, and it may be lawful. . . . A strike to enforce a closed shop is unlawful unless there is justification." This is the view of *Huskie* v. *Griffin, supra,* quoting from *Parkinson Co.* v. *Trades Council,* 154 Cal. 581. "Any injury to a lawful business, whether the result of a conspiracy, or not, is *prima facie* actionable, but may be defended upon the ground that it was merely the result of a lawful effort of the defendants to promote their own welfare." *Ib. p.* 348; and on *pp.* 351, 352, "The authorities are practically unanimous to the effect that the defendant is liable unless he shows a justification." The facts show an inter-

ference with the plaintiffs' right and there is no evidence of justifica-
tion.   The plaintiffs have made out a *prima facie* case and their bill
is not to be dismissed on motion in the nature of a motion for non-
suit at law, which appears to have been understood to be the effect
of the ruling, unless illegal action in the conduct of the strike ap-
pears.   The exception is sustained.   The result on this point is
not affected if, as is claimed, the correct statement of the plaintiffs'
right is to be free from unreasonable interference in the management
of their business.   The interference being proved, the "justifica-
tion may be found sometimes in the circumstances under which it is
done irrespective of motive, sometimes in the motive alone, and
sometimes in the circumstances and motive combined."   *Plant* v.
*Woods*, 176 Mass. 492, 499, 500.   The test laid down in *Huskie* v.
*Griffin* is reasonable conduct, dependent upon all the circumstances
of the case, the advantage and profit to one and the unavoidable
injury to the other.   *Horan* v. *Byrnes*, 72 N. H. 93, 100.   Evidence
of motive and object lies in the breasts of the defendants.   If they
refuse to disclose, they must submit to the adverse inference neces-
sarily drawn from their silence.   The question is one of fact to be
determined as matter of law only if on the evidence reasonable men
could come to but one conclusion.   The defendants are called upon
to justify their action.   If on the whole case the burden remains
with the plaintiffs to establish an illegal interference with their
right, one unreasonable upon all the evidence, that does not destroy
their *prima facie* case.   Interference with the right of another with-
out justification is unreasonable.   Whether the motive of the
strikers was an honest effort to benefit themselves or a malicious
intent to injure the plaintiffs because they refused to aid in compel-
ling other workmen to join the defendants' union is a question of
fact upon which the case contains no evidence.   The defendants
contend that justification is to be found in the principle of competi-
tion, citing *Pickett* v. *Walsh*, 192 Mass. 572.   But there is no evi-
dence of competition to sustain the claim.   In the absence of evi-
dence of justification, further discussion of possible grounds which
might be proved will not be undertaken.

2. The second question raised relates to the conduct of the strike.
The plaintiffs' counsel asked the court to rule that all organized
picketing is unlawful.   The court declined to so rule, but did rule
that reasonable picketing was lawful; unreasonable, unlawful; and
the plaintiffs excepted.   The term picketing is new in the law of
the state.   The only definition in the case is "picketing  .  .  .

by twos, who parade the streets, observe who are entering and leaving the plaintiffs' shops in order that they may argue and persuade them to join the strike." The allegations of the bill lead to the inference that picketing may mean something more than peaceful parading, whatever that may mean. The dictionary defines picketing as "to post watchers at the approaches to a place of employment affected by a strike in order to ascertain those who work there and persuade them, or otherwise influence them, to give up the work." Webst. Dict. Picket; R. & L. Law Dict. Picketing. The cases cited in the notes, 4 L. R. A. (N. S.) 302 and 50 L. R. A. (N. S.) 412, indicate that the term may include a wide range of action. The material question is whether the acts done in prosecution of the strike are lawful or unlawful, whether properly described as picketing or by some other term. Although the term is not found in the law of the state, Public Statutes, *c.* 266, *s.* 12, as amended by *c.* 211, Laws 1913, and P. S., *c.* 264, *ss.* 1, 2, may be aimed at some acts included within the term or naturally resulting from the proceeding so called. The substance of the court's ruling was the application of the test of reasonable conduct under all the circumstances. Whether when the facts are found the acts of which the plaintiffs complain can be found to be reasonable in fact cannot be determined until the facts are found. If one may interfere with another's lawful business when it is a reasonable thing to do, it follows that he may do so in a manner not unreasonable in fact or because forbidden by legislative mandate.

*Case discharged.*

All concurred.