ALFRED O'BRIEN et al.

*v.*

THE MUSICAL MUTUAL PROTECTIVE AND BENEVOLENT UNION,
LOCAL NO. 14, NATIONAL LEAGUE OF MUSICIANS et al.

[Filed February 11th, 1903.]

1. Where the charter of a local voluntary society has been revoked by its superior general body, no court will, in the absence of a question of property right, exercise jurisdiction in the matter until the remedies by an appeal within the society have been exhausted.

2. The rights of membership evidenced by a charter granted to a local voluntary society by the general body are not, in any sense, themselves property rights.

3. The rules and regulations as to membership in a voluntary association do not, in any proper sense, confer a property right.

4. If a general voluntary association refuses to continue association with a local association, both being unincorporated, a court of equity cannot, in the absence of any question of property right, enforce the continuance of the relation voluntarily assumed.

5. Where one of the alleged objects of a voluntary musical association was to secure, so far as practicable, the control of the employment of musicians within the respective districts of the local societies, and the exclusion from such employment of those not members, the courts will not interfere to compel the continuance of association of the societies, or of membership therein, the object of which is an unjustifiable interference with the freedom of contract and of trade.

On application for preliminary injunction. Heard on bill and affidavits and answer and affidavits.

*Mr. Peter J. McGinnis,* for the complainants.

*Mr. George S. Hilton,* for the defendants.

EMERY, V. C.

This is an application on behalf of complainants, claiming to be the local association in Paterson of the American Federation of Musicians (a labor union), to enjoin the defendants, who also

claim to be the local association for Paterson, from acting or holding themselves out as members of the federation. The state of facts presenting the question for decision is substantially as follows:

On January 31st, 1902, the American Federation of Musicians, a general or national federation, granted to the seven complainants and one Shannon a charter as a local association (No. 179) of the federation, in Paterson. The American federation and the local were both unincorporated or voluntary associations.

In the application for the charter, jurisdiction or exclusive authority for the local association was claimed or asked for the territory within ten miles of the Paterson city hall in all directions, except in a southerly direction, and in that direction to the city line. The constitution of the federation (article 7) provides that the local shall be entitled to such jurisdiction as they claim at the time of applying for the charter, but the "certificate of affiliation," which is the only charter granted, purports to grant a certificate of affiliation to the applicants, the complainants, Shannon and their successors, "to constitute a local association for the purpose of a thorough organization of the federation of all musicians," and the association, being duly formed, is authorized to initiate members according to its own by-laws. The certificate appears to have been issued by the executive council or board. This board (by-laws, section 6) has a general supervision of all matters pertaining to the federation. The executive board, after an investigation and report by the secretary as to the circumstances of issuing the charter, made an order on June 7th, 1902, that the charter for the local association (No. 179) be reopened for thirty days, to allow all musicians in its jurisdiction an opportunity to join as charter members. The privileges and fees of charter members are different from and more favorable than those of members admitted subsequently. This order to reopen the charter was not at once obeyed by the officers of the local, but it was subsequently complied with, after the secretary of the federation, on September 18th, 1902, had directed the secretary of the local association to reopen the charter for thirty days, publishing a notice in the

local papers. The secretary of the federation further stated that failure to comply with the direction to reopen the charter would cause suspension of the charter. Complainants, in their bill, challenge the validity of this order to reopen the charter, but as they acquiesced in the order, published the notice required and did reopen the charter, this objection cannot be considered as a ground for preliminary injunction. It appears by the defendants' affidavits that one object in reopening the charter was to allow the admission as charter members of a local association then existing in Paterson, known as Local 14, National League of Musicians, and whose members (one hundred and forty-nine in number) are defendants in this suit. This local No. 14 is incorporated under the laws of New Jersey. The reopening of the charter was for the purpose of allowing applications for admission of the defendants and other musicians on the basis of charter members of the association.

The certificate of affiliation was granted, as has been stated, to complainants, "for the purpose of a thorough organization of the federation of all musicians," and the power to prescribe conditions of membership is in terms given by the constitution to the association duly formed. Under these terms the American Federation of Musicians would seem to have the right to supervise the original organization for the purpose of procuring a charter, and would, as I am now inclined to think, have the right, in a proper case, to direct the opening of the charter and to supervise or review the proceedings for organization on the reopening.

The executive officer of the district in which the local is situated has (by-laws, section 8) charge of the organization of associations within his district, and this officer attended at Paterson for the purpose of supervising or giving directions as to the application for membership under the reopening of the charter. This officer, as he says in his affidavits, directed that the members of the association of musicians in Paterson, called the Musical Mutual Protective and Benevolent Union, Local No. 14, National League of Musicians, should be allowed to apply and be admitted in a body as charter members. Complainants deny that these directions were given, but for the purpose of

this application the defendants are entitled to the benefit of their statements under oath. The application was made in this form by the president and secretary of local No. 14 on behalf of the body, and thereupon the complainants, being the officers, or some of the officers named under the existing charter, refused or declined to allow the admission of the members of the musical union as charter members under this application. The claim of the complainants is that under the by-laws and charter of the American Federation of Musicians the admission must be of each person separately and under application of the form presented by the rules or by-laws of the association. By reason of this action refusing the admission of the members of the local No. 14 in a body, upon the reopening of the charter, the charter granted to complainants was revoked. By what officer the formal revocation of the charter was actually made does not appear with exactness by the affidavits on either side, but the fair construction of all of the affidavits is that the charter was revoked by the executive officer of the district, and that his action was approved by the president of the American Federation of Musicians, who, under the by-laws (section 1) exercises a general supervision over the affairs of the federation and decides cases of emergency. Under the by-laws (section 6) an appeal lies from the decision of an executive officer to the executive board, which is composed (constitution, article 8) of the president, vice-presidents, secretary and executive officers of the districts, and a further appeal lies from the decision of the executive board to the convention of the federation. No appeal from the decision revoking the charter has been taken, nor have complainants taken any steps or intimated any intention to prosecute an appeal within the association, although notice of the revocation of the charter was received about November 1st, 1902, two months before the filing of this bill. Subsequently to this revocation the American Federation of Musicians granted a charter (as local No. 248) to the defendants, the musical mutual, &c., association; and these defendants now claim to be members of the American Federation of Musicians for Paterson and vicinity. An opportunity was given to the complainants' association to join this local in a body, but they did not accept

O'Brien *v.* Musical Mutual P. & B. Union.

this offer. The complainants, being the original charter members (except Shannon), claiming under the original charter or certificate as No. 179, and that its revocation is illegal, now apply individually and on behalf of the members of their association (numbering about one hundred) to enjoin the local No. 14, and all of its individual members (about one hundred and fifty), parties to the suit, from organizing as a local of the American federation in Paterson, or in the territory claimed to belong exclusively to complainants, and from continuing this organization or advertising as such, and from applying to the trade unions of Paterson for recognitions as such association. The American federation is not a party to the suit, but one Bierre, the executive officer of the district, is made a party, and an injunction against him is asked. He is a non-resident of the state. While the complainants have paid the sum of $37.50 to the American federation as the charter fee, and this sum has not been tendered back, the complainants have had the privilege of coming in under the new association organized by defendants, under the direction of the American Federation of Musicians, without payment of any additional fee. This suit, however, is not brought by complainants against the American federation to recover this money, nor is it brought to assert against the defendant local association any right to funds or other property, or to the use or enjoyment of any property, real or personal. No right of property is therefore involved in the case, unless the right of membership is to be called property. It is claimed by the bill and affidavits that this membership of the American Federation of Musicians, through its local association, carried with it certain advantages and privileges to the individual members, resulting from the practice of labor or trade union organizations, especially in Paterson, to employ no musicians except those connected with the American federation, and it is also claimed that the deprivation of this membership will expose the individual members of complainants' association to a pecuniary loss by reason of the subjection to posting or denunciation by trade unions as "scabs" or "unfair," and to the penalty of being blacklisted by labor organizations generally throughout the United States and Canada.

34

O'Brien *v.* Musical Mutual P. & B. Union.

If the association were incorporated there would be two valid objections to the use of an injunction for the purpose of compelling the American federation (if a party to the suit) to continue and to recognize the membership which, rightfully or wrongfully, it has dissolved: *First,* rights of membership in incorporated voluntary associations are, under the settled practice in this state, and where no right of property of the alleged member is involved, to be determined by the supreme court on applications for *mandamus* to admit to membership. *Sibley* v. *Carteret Club, 11 Vr. 295; Zeliff* v. *Knights of Pythias, 24 Vr. 536 (Supreme Court, 1891).* These cases are cases where the individual member who was, as he claimed, wrongfully expelled applied for restoration. In the present case the local association is the member of the American federation, and the membership in the American Federation of Musicians is effected only through membership in the local. The constitution (article 3, section 1) expressly provides that the local associations are the members of the American federation. In the *second* place, where the question is one of membership merely, and the decision involves a matter of discipline or application of the rules and regulations of the association and not of property right, no court, either of law or in equity, will exercise jurisdiction until the remedies by appeal to the authorities of the association, under its rules, have been exhausted. *Zeliff* v. *Knights of Pythias, supra.* The only cases which have come under my observation where the courts afford relief to a person claiming membership in an incorporated association, who has not exhausted his right of appeal upon the question of membership within the order, are those where the person claiming membership claims also, as a result of membership, some distinct individual property right, under a contract or other obligation of the association with him as a member. *Supreme Lodge* v. *Eskholme, 30 Vr. 255 (Errors and Appeals, 1896).* In these cases, which involve a recognized property right, the right of membership is decided by the court as incidental to the contract or obligation of the association; but where the question is one of settling the general *status* as to membership, for all purposes, as between the complaining party and an incorporated association, the remedies for restoring to membership pro-

vided by the association itself must be first exhausted. Where the association is unincorporated the personal relation between the members is analogous to that of partners, and the legal remedy by *mandamus,* which is appropriate for the purpose of restoring the relationship arising from membership in a corporate body, would seem to be inapplicable, and in such associations it may be that the proper procedure to protect the common property rights of a member expelled in violation of the regulations of the order is by an injunction restraining interference with his use and enjoyment of such common rights. But the rule requiring prosecution of appeal or other remedies within the order or association itself, before application to a court of equity, is one which seems to be applicable to all associations, whether incorporated or unincorporated, where the question is one merely of membership, irrespective of the enforcement of a property right. In some courts the exhaustion of the remedies within a voluntary association is required before a court of law or equity will interfere for their protection, even when a right of property is involved. *Oliver* v. *Hopkins, 144 Mass. 175 (1887)* ; *Grand Lodge Knights of Pythias* v. *People, ex rel. Waldeck Lodge, No. 136, Knights of Pythias, 60 Ill. App. 550,* cited in *49 L. R. Ann. 379.* Other courts take a different view. Cases cited in *Nibl. Acc. Ins. & Ben. Soc. 156, 215, inter al.; Loubat* v. *Leroy, 40 Hun 546.*

Complainants claim that the charter confers a property right, the right being the exclusive right of membership in the federation within a certain district, and the right to the use of the name of the association. But manifestly the charter, or, more properly, "the certificate of affiliation," does not convey, or purport to convey, any property right, either in the name or otherwise, but is only the method by which, under their rules and regulations, the right of membership in the federal association and in the local is evidenced. These rights of membership evidenced by the charter are not, in my judgment, in any sense themselves property rights, but are personal rights only.

A member of a local association may have or acquire, as against the federation, rights which are recognized property rights, such as a right to a share of its funds, or to the use or enjoyment of

its common property, but the rules and regulations as to membership cannot, in any proper sense, be properly said to confer a property right, and are essentially, in their nature, only rules and regulations describing or defining the method of their voluntary association, with its terms and conditions. Being thus personal rights only, and being also purely voluntary, the enforcement of such rules and regulations governing mere membership, and such of the relations and privileges of the members and of the local and national associations as do not involve property rights, must be left entirely to the association itself, and the penalty of expulsion which it may enforce. But courts, either of law or equity, do not, on the application of either or any party, enforce, either by decrees for specific performance, injunction or otherwise, the continuance of the association or the performance of duties and privileges which, under their rules, the members or the association, national or local, as mere members, owe to each other. A recalcitrant member or local may be dismissed for violation of the rules of the association. A member of the association improperly expelled may, by action of the courts, be protected in his rights to the common property. But the mere continuance of the relationship itself, as between all concerned, is voluntary, not legal. If a member or local desired to withdraw, the withdrawal could not be prevented by injunction or otherwise, on the theory that the agreement of membership created a contract for the performance of the duties resulting from membership which a court would enforce by compelling the performance of the rules regulating the duties. And if the national or general association refuses to continue association with a local, whether for a valid or an invalid reason, a court of equity cannot, in the absence of any question of property right, enforce the continuance of the relations voluntarily assumed. In this respect the rights of members of an unincorporated association differ from those of the members of an incorporated association. As was said by Lord Cranworth, in *Forbes* v. *Eden, L. R. 1 H. L. Scotch App. 568 (1867)* : "Save for the due disposal and administration of property, there is no authority in the courts, either of England or Scotland, to take cognizance of the rules of a voluntary association entered into merely for the regulation of

its own affairs. * * * There is no direct power in the courts to decide whether A or B holds a particular station according to the rules of a voluntary association. But if a fund held in trust has to be paid over to the person who, according to the rules of the society, fills that character, then the court must make itself master of the question necessary to enable it to decide whether A or B is the party entitled." This was a case involving alleged rights of membership in a voluntary religious association, but the general principle thus laid down has ever since been followed in relation to the merely personal rights of membership in all voluntary associations. *Rigby* v. *Connol, L. R. 14 Ch. Div. 482, 487 (Jessel, M. R., 1880)* ; *Baird* v. *Wells, 44 Ch. Div. 661, 675 (Stirling, J., 1890)* ; 1 Bac. Ben. Soc. (2d ed.) § 108. There is another objection to giving the aid of a court of equity to the enforcement in any manner of this alleged privilege of exclusive membership. One of the objects, if not the principal object, of a labor union association, such as the complainants claim to be, and the main result of membership in it, is the control or regulation, by the association or combination, of the individual action of its members in matters of contract or trade relating to their occupation or profession. The design of these common regulations controlling individual members is to secure, so far as practicable, or as is deemed advisable by the common association or body, the control of the employment of musicians within the respective local districts, and the exclusion from such employment of those who are not members—non-union men, as they are called. Complainants' bill and affidavits allege the advantages and benefits of the membership for this purpose of excluding others from employment within this district, and that this membership gives to defendants these advantages which they wish to secure for themselves. If their claim is well founded, the court, by compelling the continuance of the membership and enforcing, by injunction or otherwise, the agreements as to exclusive jurisdiction and rights of membership adopted by this voluntary association, would, as it seems to me, give a compulsory legal sanction to those rules and regulations of a voluntary association or combination of individuals which are intended to impose restrictive conditions on the individual

right of contract and on the conduct of a trade, and to secure, within a certain district, the monopoly, so far as possible, of a particular kind of labor. While these rules and regulations made between the members or the locals of a trade union association for the purpose of restricting, or tending to restrict, the freedom of contract or of trade, may not be unlawful, they are certainly altogether voluntary, as between the persons who enter into them, either personally or through local associations, and courts will not, either directly or indirectly, compel their performance. To compel, by injunction or otherwise, the continuance of association or of membership in these voluntary trade unions, either local or general, would, in my judgment, result in enforcing the performance of their restrictive regulations, and it would therefore be an unjustifiable interference with the freedom of contract and of trade. For both these reasons the application for injunction will be denied.