BALDWIN LUMBER COMPANY et al.

*v.*

LOCAL No. 560, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, STABLEMEN AND HELPERS OF AMERICA, et al.

[Submitted February 19th, 1920. Decided February 25th, 1920.]

1. An injunction to restrain picketing and other coercive measures should not be granted on a preliminary hearing except in a case where the facts clearly establish that the acts and conduct which the complainants apprehend and fear are threatened and will probably be committed.

2. A brotherhood made a co-defendant in a suit to enjoin picketing, &c., which is paying strike benefits and is sufficiently within the jurisdiction of the court to offer proofs through one on whom the rule to show cause was duly served, will, though its headquarters are not disclosed, be held to be within the jurisdiction of the court.

3. Since the strike against all the complainants was called and went into effect at the same time, and has been directed and managed in the same way and by the same parties, and the result has been common to all the yards of the complainants, the complainants may join in an action to restrain picketing, &c., in view of the provisions of the rules of this court.

4. The rules of this court are to be liberally construed.

5. The provisions of contracts making the yards of the complainants closed shops to all non-union men are against public policy and invalid.

6. Peaceful picketing engaged in for the purpose of persuation may be enjoined.

On application for a preliminary injunction on return of rule to show cause.

*Mr. Charles E. Hendrickson, Jr.,* and *Mr. Merritt Lane,* for the complainants.

*Mr. Marshall Van Winkle, Mr. Robert H. McCarter* and *Mr. Alfred Brenner,* for the defendants.

FOSTER, V. C.

This is a strike case in which complainants, fifteen in number, who are associated only for the purpose of this action, and who comprise practically all the dealers in lumber and mason materials in Hudson county, seek injunctive relief against the defendants who are four local labor unions—the International Brotherhood of Teamsters, &c., the Hudson County Building Trades Council, the Coal Drivers Union and Messrs. Buckley, Brandle, Hart and Mueller, alleged to represent one or more of the other defendants.

This relief is sought on the grounds that defendants acting jointly have caused a strike of the men employed in the several yards of complainants', and that they have employed and are resorting to picketing, intimidation and other coercive measures to make the strike a success, and that such measures unlawfully interrupt, interfere with and irreparably damage the business and property rights of each of the complainants.

From the averments of the bill and from the facts established by the affidavits used on the hearing, it appears that the strike was called because the parties could not, among other things, agree on the terms of wages, hours and working conditions that should affect the employes of the several yards from January 1st, 1920. Shortly before this date defendants jointly submitted to complainants the draft of an agreement embodying the terms under which their employes should work. This draft was substantially similar to joint agreements that had been in force between the parties for the past four years, except for an increase in wages of $10 a week, and making the working day one of nine instead of ten hours. Complainants expressed

their willingness to sign the agreement presented if the increase in wages was limited to $3, and defendants modified their demands to an increase of $7, which was unacceptable to complainants, and thereupon by the vote of the members of the unions, cast in joint meeting, the strike was called.   Complainants then filed their bill and in addition to the usual averments with respect to the injury suffered by them from unlawful picketing, intimidation and coercion, they alleged that the defendants combined and conspired and called this strike not only to compel them to accede to defendants' terms on wages, hours and working conditions, but also to compel them to accept certain provisions of the contract which requires them to make their several yards closed shops to all except union labor, by requiring them to compel all new men employed by them to join the union; by compelling them to hire only carmen who employ members of the International Brotherhood of Teamsters, &c., and who pay the prevailing rate of wages; and by obligating them to join in a secondary boycott by refusing to deliver materials to any building on which a strike has been ordered, and that for refusing to sign the agreement, each of the complainants "shall be deemed as being an unfair firm."

Although these provisions are now objected to, they were in the contracts which complainants, or some of them, jointly made with defendants for the government of their relations during the past four years.

It appears from the moving papers and complainants' supplemental affidavits, that the strike was called on January 10th last, and that in obedience to defendants' orders, the drivers and yard men employed by complainants quit work, and since then these former employes have engaged, with strangers, in picketing the front and rear entrances and the immediate neighborhood of the yards where they were employed, or the yard of some other of the complainants; that this picketing has resulted in the interruption and finally in the stoppage of all business in complainants' yards; in the interference with and intimidation of the customers of complainants or some of them; in preventing some of their employes who desired to do so from remaining at or returning to work; in an assault, in one instance,

by throwing stones at other men employed by one of the complainants; in the intimidation of a carman employed by another yard; in preventing the unloading of materials from boats and cars, and has completely stopped the delivery and attempted delivery of materials for much needed work on buildings, lifeboats, etc., and in at least one instance caused the refusal of a stationary engineer to handle material delivered from the yard of one of the complainants by an independent carman.

It appears that three or four of the yards were not picketed in the beginning of the strike; since the rule to show cause was issued, however, and because of the conduct of the pickets and the results to other yards from this picketing, the owners of these yards have felt compelled to close the same, and all the complainants have ceased doing business.

Defendants by their affidavits specifically deny the charges of interference, intimidation and coercion; they admit that some of the former employes of complainants may have engaged in peaceful picketing, but they insist that complainants' proof is wholly lacking in identifying any of their former employes as the men who interfered with or intimidated any of their customers or employes; and while it is true that such identification is largely absent from the proof, it does appear in some instances that some of complainants' former employes were present when others, not identified, interfered with and used threats or intimidation to some of complainants' customers or employes. And it also significantly appears that some of the employes of complainants having made affidavit to the effect that they had no grievance and did not desire to strike, later joined the strike and by other affidavits retracted all they had previously sworn to. And while the affidavits of defendants deny, on the part of many of the former employes of complainants some of the matters charged in the bill and affidavits, they do not dispute or deny the interference and intimidation which complainants' proof establishes has actually occurred at some of the yards, and to some of the cartmen hired by one or more of the complainants, and there are many of complainants' former employes who do not join in defendants' denial, leaving the doubt, if any, about their participation in such coercive acts, in favor of the complainants.

On this branch of the case, the proofs are satisfying that the business and property rights of complainants, except the three hereinafter mentioned, have been and are being seriously interfered with and are threatened with irreparable injury by the picketing, intimidation, and coercion indulged in by their former employes, and others associated and acting in concert with them, under the direction or with the sanction of the defendants or some of them.    But the proofs are not satisfying that this threatened irreparable injury is impending over the yards of three of the complainants, for it appears that at the time of filing the bill there was no picketing or interference with the yards of the following named complainants: O'Neill's Lumber Company, Jersey City Lumber Company, Chas. H. Engler Lumber Company, Oakland Lumber Company, Gardner & Meeks and Conlon & Company; immediately upon the service of the rules to show cause, picketing and interference with employes and customers of the O'Neill, Jersey City and Oakland yards was instituted.    No such conduct is alleged or established against the yards of Engler, Gardner & Meeks or Conlon.    These three complainants state, however, that they have ceased business and have closed their yards through the fear that their employes and their customers will be interfered with and intimidated if they re-open their yards and attempt to do business without the protection afforded by injunction.    It may be that their fears are well grounded, and while it is true that the remedy of injunction is preventative and not punitive, it is also true that this remedy should not be granted on a preliminary hearing, except in a case where the facts clearly establish that the acts and conduct which complainants apprehend and fear are threatened and will in all probability be committed.    Such does not appear to be the situation at this time at the yards of Engler, Gardner & Meeks and Conlon, and until this situation does arise at those yards the preliminary injunction should not issue to restrain defendants from committing acts which so far they have not threatened or by their conduct indicated the slightest intention of attempting.    *Meyer* v. *Somerville Water Co., 79 N. J. Eq. 613,* must control, and requires the denial of the injunction these three complainants seek.

In addition to the denial of the facts, defendants object on several grounds to the issuance of any injunction. The first of these objections is addressed to the jurisdiction of the court over the International Brotherhood of Teamsters, &c., and over the Coal Drivers' Union, and counsel appeared specially for these defendants to urge this objection.

It developed at the hearing that counsel for complainants and for the defendants, also, did not know if there was such an organization as the Coal Drivers' Union, and if there were, it does not appear that any of the individual defendants represent it, or was authorized to receive service of a copy of the rule to show cause for it. If there is any such organization—and judging from the special appearance of counsel for it, it seems, notwithstanding their doubts about it, that there is—it is not only not properly before the court by due service upon it, but there is not a single fact in the case to show why it should be enjoined, or that it has any relation to the present situation; and as to this defendant, the motion to dismiss will be granted.

With respect to the International Brotherhood of Teamsters, &c., it appears from the allegations of the bill, and it is not denied, that this brotherhood is an unincorporated organization, made up of local unions and joint councils like the defendant, the Teamsters' Joint Council of Hudson County; that the international is a party to the contract in question; that one of the representatives of the international and the locals is the defendant, the Hudson County Building Trades Council; that the international was represented in the negotiations between complainants and defendants over this contract by the defendant Theodore M. Brandle, vice-president of the Hudson County Building Trades Council, who was also the representative of the unions.

The bill charges and the affidavits establish that the international is paying to some of the strikers while engaged in picketing, strike benefits; and this is not denied. The proof of service shows that the service of the rule to show cause for the international was duly made on Brandle, and that the copy served and accepted by him was prominently marked for the international. For all purposes Brandle appears to have been

the representative of the international through this controversy and neither he nor any one else makes affidavit that he is not.

In the person of Brandle the international was sufficiently within the jurisdiction to execute this contract if complainants had executed it, and it was and still is sufficiently within the jurisdiction to pay strike benefit and to offer proof on other features of the case through Brandle; and I am unwilling to hold that this unincorporated organization, whose headquarters are not disclosed, may for its own purpose be within the jurisdiction of the state, through its representative Brandle when it pleases, and that the court is powerless to say that it is within the jurisdiction when process in these proceedings is duly served upon it through the same representative. Such attempted shifting of representation cannot be permitted to prevent the court from reaching any and all parties to this controversy. This particular defendant, which appears largely responsible for the continuation of the strike through the aid and assistance given by it in the payment of strike benefits, should not be permitted, through the statement of counsel, unsupported by proof, to avoid the jurisdiction of the court, and be at liberty to continue its activities on behalf of this strike. I consider it to be within the jurisdiction, and its motion to be dismissed is denied.

The next objection denies the right of complainants to unite in the prosecution of this action, and the facts pertinent to its consideration are: that the former contracts between the employers and their employes were joint contracts executed by complainants and the defendant organizations; that the contract in question is of the same joint character; that the vote to order the strike was taken at a joint meeting of the unions; that the strike against all the complainants was called and went into effect at the same time, and has been directed and managed in the same way and by the same parties, and the result has been common to all the yards—a complete cessation of business. The rules of court are to be liberally construed (*Renwick* v. *Hay, 90 N. J. Eq. 148,* and cases cited), and Rules Nos. 5, 23 and 24 seem clearly to sanction the joinder of complainants in prosecuting this action, in which there is a common question

of law and fact arising out of the same transactions with the defendants, and in which they seek to prevent defendants by their joint conduct doing them severally an injury for their joint refusal to comply with defendants' demand for the execution by them of this joint contract. Their grievances and injuries arise out of the same joint transactions, and are the results of the same joint action and conduct of defendants; and no satisfactory reason has been shown why they should not be permitted to jointly ask for relief.

It is further insisted that an injunction cannot go against any of the defendant organizations because they are not shown to be corporations, and therefore cannot be sued in a court of equity.

This contention is contrary to the result of a large number of cases in this court, including cases against labor unions that have been passed upon by the court of errors and appeals; and if any change in this practice is to be made, it seems proper to leave it to that court to make the change; but for the purposes of the present case, any preliminary injunction that may be advised can be so framed that it will not only restrain the defendant organizations, but also the individual defendants and all others associated with them in committing the acts and conduct enjoined.

Objection is particularly urged against the injunctive relief sought on that branch of the case relating to the execution of the contract containing the provisions for making the yards of complainants closed shops to all non-union men; the insistment being that if such contracts are illegal, complainants need not perform them; and further, because complainants during the past four years have executed, without objection, contracts containing similar provisions.

Contracts of this character containing provisions designed to unionize an entire industry in a territory as large as Hudson county, do not appear to have come directly before our courts for consideration, except as hereinafter mentioned. In other jurisdictions where they have been involved, they have uniformly been held to be illegal as against public policy. *Conners v. Connolly (Connecticut Court of Appeals), 86 Atl. Rep. 604:*

*Berry* v. *Donoran (Supreme Court of Massachusetts)*, *188 Mass. 353; Plant* v. *Woods, 176 Mass. 492; Folsom* v. *Lewis, 208 Mass. 336; Curran* v. *Galen (Court of Appeals), 152 N. Y. 33; Auburn Draying Co.* v. *Wardell, 178 App. Div. 270; affirmed, 227 N. Y. 1.* The illegality of such contracts is pronounced upon the fundamental principles of our theory of government, to which monopolies of any kind affecting in any way the utmost freedom of the individual to pursue his lawful trade or business are abhorrent. As was said in *Folsom* v. *Lewis, supra,* "The law condemns all combinations, whether in respect of labor or of so-called capital, which seek to become monopolies and thus oppressive to the people." Any departure from these principles must necessarily result in the preferential recognition under the law of one class of citizens over all others; and the undisputed facts in this action disclose a purpose on the part of the defendants to obtain this class preference, by the terms of this contract which they expect to secure from complainants through the coercive effect of the strike. The authorities cited hold such contracts to be violative of public policy; and the past voluntary, or compulsory acquiescence of complainants respecting them does not alter their character, nor does the fact that, as in this contract, in addition to its unionizing features, there are provisions relating to such legitimate subjects of agreement, as wages, hours of labor and other working conditions. The exception referred to in which any of our courts has had a contract of this nature before it, was in the case of *Brennan* v. *United Hatters, 73 N. J. Law 729,* where Mr. Justice Pitney, in delivering the opinion of the court of errors and appeals (at *p. 738*); said, "its lawfulness admits of question."

The remaining question to be considered relates to the restraint on peaceful picketing. It is insisted that the restraint imposed under the rule and which is asked to be continued by preliminary injunction, enjoins peaceful picketing and persuasion, and that in this respect it is beyond the scope of the restraint imposed by Vice-Chancellor Bergen in *Jonas* v. *Glass Assn., 72 N. J. Eq. 653,* and approved by the court of errors and appeals in *77 N. J. Eq. 219,* in affirming the decree in the case.

CASES IN CHANCERY, 1919–1920.          249

*91 N. J. Eq.*    Baldwin Lumber Co. *v.* Inter. Brotherhood, &c.

A careful consideration of the vice-chancellor's opinion, and of the opinion of Chancellor Pitney in the court above, and the dissenting opinions therein do not support this insistment. Vice-Chancellor Bergen quoted with approval from the opinion of Judge McPherson in *A. T. & St. Fe Ry. Co.* v. *Gee, 139 Fed. Rep. 582,* that, "There is and can be no such thing as peaceful picketing any more than there can be chaste vulgarity or peaceful mobbing or lawful lynching;" and later in his opinion the vice-chancellor held that such picketing "In its mildest form is a nuisance and to compel a manufacturer to have the natural flow of labor to his employment sifted by a self-constituted committee whose very presence upon the highway for such purpose is deterrent, is just as destructive to his property as is a boycott which prevents the sale of his product." This language was neither criticised nor modified in any of the opinions in the court above. Chancellor Pitney in delivering the prevailing opinion summarized the ten features of the strike to which the restraint advised by Vice-Chancellor Bergen applied, and his comment on No. 3 was: "With respect to other persons not as yet employed but willing to take employment under the complainant, the defendants are restrained from interfering to prevent this coercion or personal molestation and annoyance, but are not restrained from using mere persuasion in such a case." The minority members of the court reached a different conclusion on the nature and extent of the restraint. Mr. Justice Garrison's dissenting opinion in the case (at *p. 232*) was as follows: "In so far as the decree appealed from directs that the defendants be enjoined from the peaceful persuasion of persons who are not under any contract to serve complainant, I think the court below was in error and that to that extent the decree should be reversed. I am requested by Justice Swayze and Judge Bogart to state they concur in the foregoing view."

In the absence of a positive declaration to the contrary in the majority opinion these dissenting opinions are indicative of the extent to which the injunction in that case extended; and taken in connection with the views expressed by the vice-chancellor, they are authority for the conclusion that in the *Jonas Case* peaceful picketing engaged in for the purpose of

persuasion, regardless of whether the persuasion was addressed to present or prospective employes of complainant, was enjoined.

The restraint·imposed under the rule will be continued (except in the case of Engler, Gardner & Meeks and Conlon) against the defendants, and their representatives and those associated with them in the promotion and management of the strike, and·it will be extended to enjoin the acts and conduct specified in subdivisions A and B of the prayer of the bill.

The application for a reference to a special master to take testimony in aid of complainants' bill, even if it is the novelty in our practice defendants' claim, can await consideration until the answers defining the issues between the parties have been filed.

The terms of the order can be settled on two days' notice.