This is a labor case.
Complainant is engaged in the business of plating and polishing metals. In its polishing department have been employed twenty-five to thirty men, all of whom, prior to January, 1937, were members of the defendant Local 44 of the Metal Polishers' Union. They have been paid on a piecework basis with no fixed work hours. Sometimes the men worked as long as seventy-six hours a week — though I suppose this was exceptional. *Page 299 
Early in the year, complainant and the union started to negotiate a contract. The union asked among other terms, a forty-hour week, minimum wages of eighty-five cents an hour for journeymen and fifty cents for apprentices, and a closed shop. The negotiations broke down. In July the local voted to strike, and about fifteen of the polishers walked out and about ten remained at work. The union has picketed the plant; some violence and intimidation are charged, but the proof thereof fails. Some criticism is made of the signs carried by the pickets and of cards distributed by defendants, but defendants agree to modify the wording.
Defendants try, wherever possible, to get a closed or union shop agreement, with employers. At the present time, approximately half of the industry has collective bargaining agreements with organized labor, some with the defendant union which is an affiliate of the American Federation of Labor, and some with a rival union associated with the Committee for Industrial Organization. Most, but not all, of these agreements contain closed shop clauses.
The affidavit of Mr. Dumpert, business agent of Local 44, says: "We have found out, through long experience, that union shop provisions in a contract are a protection to the men in their union membership and enable them to deal more effectively with the employer on the questions of hours, wages and adjustments of grievances. We have also found that without such provisions in many cases union men are discriminated against in respect to the terms, conditions and tenure of their employment. The union shop provisions tend to eliminate that type of discrimination." It further appears from the affidavits for defendants that last October officers of the complainant urged one of the members of the union to drop out of the union: "If I did so, he said there were a few other men who would also drop out and we would then be guaranteed the best work in the shop with steady employment all the way through and they would get rid of the union." In January, some of the men, including the "shop steward" (principal representative of the union), were discharged, and other men, not members of the union, were employed in their places. These affidavits are not contradicted. *Page 300 
I find as a fact that the defendant union has not a monopoly of labor in this locality in the metal polishing industry, or anywhere near a monopoly; that the contract which defendants seek, would not greatly restrict non-union workers' opportunity for employment; that the defendants' motive is to obtain employment for themselves and to protect themselves against discrimination.
Complainant says that a contract between an employer and a labor union whereby the employer agrees to operate a closed shop, is contrary to public policy and void; that a strike conducted in the hope of inducing the employer to enter into such contract is unlawful, and hence that the picketing regardless of the manner in which it is conducted, should be enjoined since it is incidental to the unlawful strike.
A distinction must be drawn between a closed shop in a single factory, or group of factories, and a closed shop in substantially an entire industry throughout a considerable area. And in the latter case there is the further distinction between a closed shop sought by a union as a protective measure, and one sought in order to create a monopoly of labor. By the great weight of authority, the last case is held to be contrary to public policy. As to the question of a closed shop in substantially an entire industry, based on motives intrinsically self-protective, the authorities are conflicting. But the decisions are almost unanimous that a closed shop in a single factory is consonant with public policy and lawful.
"18. A bargains with a labor union to employ only union labor. The bargain is legal unless the union has such a monopoly as virtually to deprive non-union workers of any possibility of employment; and even in that case it is not illegal if a statute legalizes such labor unions." 2 Restatement: Contracts § 515.
"A contract between a single employer and a labor union, providing for exclusive employment of its members, is not in itself unlawful at common law or under the Federal Anti-Trust act as being in unreasonable restraint of trade or tending to create a monopoly." 41 C.J. 171.
"According to the weight of authority, a contract by an employer to employ union labor exclusively is valid, at least where the restraint imposed is not unreasonable, in view of the surrounding facts and circumstances." 16 R.C.L. 426. *Page 301 
For recent cases on closed shop agreements, see note,95 A.L.R. 18.
That the law of New Jersey is in harmony with the foregoing quotations, was settled last winter by the court of errors and appeals in Hudson Bus, c., Association v. Hill Bus Co.,121 N.J. Eq. 582. This was a suit by a labor union against an employer to enforce a closed shop contract, and resulted in an injunction forbidding the company from employing or discharging contrary to the terms of the agreement. While there is no discussion in the opinion of the validity of the contract, it certainly could not have been enforced were it contrary to public policy. This decision does not conflict with the earlier cases ofBaldwin Lumber Co. v. Local No. 560, InternationalBrotherhood, c., 91 N.J. Eq. 240, and Upholsterers, c.,Union v. Essex Reed and Fibre Co., Inc., 12 N.J. Mis. R. 637.
In the former, Vice-Chancellor Foster held illegal as against public policy a closed shop contract designed to unionize an entire industry in a territory as large as Hudson county. In the latter, Vice-Chancellor Berry refused to enforce a closed shop contract which he stated was "part and parcel of an attempt to unionize the whole industry in the metropolitan area and to create a monopoly of labor in that industry." And he distinguished a New York case on the ground that monopoly was not there proved.
The contract which the union seeks is not illegal. Is it unlawful for the union to call a strike and picket in order to induce complainant to execute the contract? Complainant argues that while an employer may, of his own free will, employ only union men, and while he may voluntarily enter into a contract with a union to that end, yet the union cannot "compel" him to do so. Of course not. Neither can it compel him to raise wages or shorten hours, or enter into any contract whatever. What is meant by "compel?" My bank "compels" me to give collateral and to pay interest at six per cent., but actually I exercise an option; I voluntarily agree to pay the interest and give collateral instead of going without the loan. A labor union offers an employer alternatives — higher wages, shorter hours and a closed shop, or a *Page 302 
strike. He weighs the situation and chooses; in a legal sense, he is not compelled. Under our law, strikes and picketing are lawful inducements; they become unlawful only when conducted in an unlawful manner, or for an unlawful object, or for an object not substantially connected with the economic well-being of the members of the union. New Jersey Painting Co. v. Local No. 26,c., 96 N.J. Eq. 632.
This principle was applied by the court of chancery to a closed shop controversy nearly fifty years ago in Mayer v. JourneymenStone Cutters Association, 47 N.J. Eq. 519, a suit by employers and non-union workmen against a labor union to enjoin defendants from attempting to enforce a closed shop by means of strikes, boycotts or other methods of violence or intimidation. Vice-Chancellor Green dismissed the bill, holding that the right to strike was absolute, saying that the defendants "have agreed not to work with any but members of their association and not to work for any employer who insists on their doing so by withdrawing from his employment. So long as they confine themselves to peaceable means to effect these ends, they are within the letter and spirit of the law and not subject to the interference of the courts." Vice-Chancellor Stevenson reached the same result in Jersey City Printing Co. v. Cassidy,63 N.J. Eq. 759. "Union workmen who inform their employer that they will strike if he refuses to discharge all non-union workmen in his employ, are acting within their absolute right and, in fact, are merely dictating the terms on which they will be employed."
The law appears to have been settled by Bayonne Textile Corp.
v. American Federation of Silk Workers, c., 114 N.J. Eq. 307;modified, 116 N.J. Eq. 146. The vice-chancellor found that the defendant association "is striving to effect a nation-wide union of employes in the industries in which complainant is engaged with the object of compelling employers to employ none but members of said union." He said (114 N.J. Eq. 318), "activities of third parties such as the defendants in the case sub judice
to disrupt complainant's business upon the pretense they are seeking to advance the *Page 303 
interests of complainant's employes whom they have induced to quit work in complainant's factory, when their real purpose was and is to effect a joinder of labor forces in the general industry throughout the country, of which the complainant is a small part, is illegal and will be enjoined." And he citedFolsom v. Lewis, 208 Mass. 336; 94 N.E. Rep. 316, and Berry
v. Donovan, 188 Mass. 353; 74 N.E. Rep. 603, as authority for the proposition that a strike to compel employers to submit to an attempt to obtain for the union a complete monopoly of the labor market, by forcing all laborers who wish to work to join the union — is unlawful. The defendants were enjoined from "being in anywise engaged in any strike against or picketing of the complainant, its business or factory." The court of errors and appeals unanimously modified so as to permit continuances of the strike and peaceful picketing. Mr. Justice Heher noticed that the defendant's design was to compel complainant to operate its plant as a closed shop and while he did not again use that term in his opinion, he said, "it is not the size of the union that taints it with illegality, it is rather the unscrupulous means or methods employed or the striving of attainment of an unlawful object — the abuse of the power thereby given — that brings it within the condemnation of the law." I do not see how the conclusion can be avoided that this decision of our highest court, rendered only three years ago, establishes that a strike and picketing, in order to obtain a closed shop, is not illegal.
Now for certain cases cited by complainant. Lehigh StructuralSteel Co. v. Atlantic Smelting and Refining Works, 92 N.J. Eq. 131,
grew from a contract between an association representing nearly all the building contractors of New York City and Long Island and an association of labor unions binding the contractors to employ only union men, and having for its object the monopolization of the labor market by the unions. Vice-Chancellor Backes condemned "the principle of the closed shop — i.e., the monopolization of the labor market." That he did not mean that a strike to secure a closed shop in a single factory was illegal, appears from his comment on decisions permitting strikes for closed shops: *Page 304 
"Upon an examination of these cases, it will be found that the unions convinced the court that their motives were intrinsically self-protective in a lawful way and not monopolistic of purpose." And he said that White Mountain Freezer Co. v. Murphy,78 N.H. 398; 101 Atl. Rep. 357, "clearly indicates the point of cleavage that prima facie a strike for a closed shop is unlawful but may be justified by showing that it was inaugurated to advance the material interests of the unions." In Elkind Sons, Inc., v.Retail Clerks, c., Association, 114 N.J. Eq. 586,
Vice-Chancellor Berry enjoined picketing. "The purpose of the so-called strike and the object of the defendants' demands was to compel the complainants to adopt the closed shop and employ only union labor. * * * The strike agitators were mere volunteers. They sought mainly to advance their own personal interest by demonstrating to their superiors their usefulness in inciting strikes and their ability to enforce their demands." I think the case falls into the class of those dealing with strikes which are not called for the benefit of the union. The same learned judge enjoined strike activities in J. Lichtman Sons v. LeatherWorkers' Industrial Union, 114 N.J. Eq. 596. But in that case it appears from his opinion that the main object of the strike was to force a closed shop upon the entire leather industry in the vicinity of Newark. Vice-Chancellor Stein, in Wasilewski v.Bakers Union, Local No. 146, c., 118 N.J. Eq. 349, enjoined picketing in a case in which there was no strike. But he said, "the right of labor unions to persuade and induce, by lawful means, employers to employ only union labor, is not denied." Like the case last cited, Gevas v. Greek Restaurant Workers' Club,99 N.J. Eq. 770, and Blakely Laundry Co. v. Cleaners' andDyers' Union, c., 11 N.J. Mis. R. 915, were cases of picketingsans strike and so fell within the rule of Feller v. Local144, International Ladies Garment, c., Union, 121 N.J. Eq. 542.
The last case to which I am referred by complainant is another decision by Vice-Chancellor Berry, International Ticket Co. v.Wendrich, 122 N.J. Eq. 222. He said, "and it seems strange that at this late day it should be necessary to *Page 305 
repeat that a strike that has as its object the `closed shop' is unlawful and that a contract providing for the closed shop is illegal and unenforceable." The opinion does not state the surrounding circumstances, but from the citations in it, I assume that the strike in the ticket company's plant was but an incident of a broad move toward a monopolization of the labor market and that his words should be understood as applicable only to such a situation.
Counsel for defendants cites an unreported memorandum of Vice-Chancellor Buchanan in Paramount Markets, Inc., v. JerseyCity, c., Clerks Union (docket 110/628), in which he denied an injunction against picketing, saying, "A strike or similar activity carried on for the purpose of establishing a closed shop in a whole industry or in a large locality has been held unlawful; but complainants cite no authorities to show that the endeavor to have a single store or a small portion of the industry agree to a closed shop, is unlawful or against public policy; nor any authorities to show that if the strike activity is not solely for a closed shop but also for other purposes which are not unlawful but have for their object the betterment of the condition of employes, such activity should be enjoined."
In view of the surrounding circumstances shown by the affidavits, the strike and picketing have a lawful object. Order to show cause discharged.