Complainant Wilson is an employe of the Newark Newsdealers Supply Company, in its magazine mailing department, where he has worked a dozen years. Last May the company entered into contract with defendant Newspaper and Mail Deliverers' Union of New York and Vicinity, whereby the company agreed to employ only members of the union in most of the branches of its business, including the magazine mailing department. Wilson and three other non-union *Page 348 
employes in that department thereupon applied for membership in the union and were rejected. Promptly the other three were discharged and their places taken by union men, resident in New York.
Complainant did not rest with the first denial of his application for admission to the union, but obtained a review by the general meeting of the union. However, on January 25th, he was finally denied membership, not because of any objection to him personally but solely because "the books of the union were closed to new membership, by reason of the fact that many members in good standing of the union were unemployed."
Meanwhile Wilson had retained his employment with the company. The day after the general meeting of the union, its representatives formally notified the company that it "was breaching its contract with the union by continuing the complainant in its employ, and that the union would not sanction such continued employment."
But one more fact needs mention. There is only one firm in Newark which employs non-union men in Wilson's line of work; other shops are closed to him.
The complainant appeals to chancery for aid; he prays that the union be restrained from interfering with his employment. The union relies on its closed shop contract. If that contract is opposed to public policy and void, defendants are not justified in interfering between Wilson and his employer, and the injunction should be granted.
In Four Plating Co., Inc., v. Mako, 122 N.J. Eq. 298, the court found "that the defendant union has not a monopoly of labor in this locality in the metal polishing industry, or anywhere near a monopoly; that the contract which defendants seek, would not greatly restrict non-union workers' opportunity for employment; that the defendants' motive is to obtain employment for themselves and to protect themselves against discrimination." And held under such circumstances, that the closed shop contract sought by the union was not illegal. But the facts in that case were very different from those now before the court. Here the union has a substantial *Page 349 
monopoly; closed shop contracts do seriously narrow Wilson's chance of employment.
Many cases, of which a much cited example is Lehigh StructuralSteel Co. v. Atlantic Smelting, c., Works, 92 N.J. Eq. 131,
denounce the closed shop under circumstances closer to those here present. A contract for a closed shop is contrary to public policy, when it has the effect, in conjunction with similar contracts and policies adopted by other employers, of creating a substantial monopoly of labor, unless the closed shop is enforced only for the reasonable protection of the members of the union. Complainant would amend this statement of the rule by striking out the last clause. He argues that when it creates a monopoly, the closed shop is illegal, regardless of purpose and use. I find it unnecessary to pass on this point.
For the consideration of the present case, labor unions may be divided into two groups. In that which includes defendant, the union is an exclusive club, run for the benefit of its members and those fortunate persons whom it may elect. Its policies are baldly selfish. The other group comprises those unions which welcome to their ranks all good men in the same line of work, who will submit to the common discipline. They believe with Chief-Justice Taft, "it is helpful to have as many as may be in the same trade in the same community united, because, in the competition between employers, they are bound to be affected by the standard of wages of their trade in the neighborhood. Therefore they use all lawful propaganda to enlarge their membership, and especially among those whose labor at lower wages will injure their whole guild." American Steel Foundries v.Tri-City, c., Council, 257 U.S. 184; 42 Sup. Ct. 72. While the policies of such unions are selfish, as are those of all business organizations, still they are so far enlightened that they seek to aid their members by helping all workers in their trade who will join with them. They make contracts for exclusive employment of union men, not to create an artificial shortage in the labor market, but in order that there be no discrimination against union men; and that all the *Page 350 
employes may share the financial burden which is an incident of organization, and so as to ensure a united stand in negotiations with the employer.
In Harris v. Geier, 112 N.J. Eq. 99, I said that "the policy of New Jersey approves of the organization of employes in trade unions which are governed on democratic principles and membership in which is open, on reasonable and equal terms, to all persons of good character and of skill in the trade;" and added the thought, obiter dictum, "that the monopolistic tendencies or purposes or contracts of such unions are not contrary to the policy of the state." While many learned lawyers may disagree with the last statement, I have no doubt of the converse: That monopolistic, closed-shop contracts of an exclusive, restricted-membership union, are counter to our policy; the restriction of membership extends the effect of such contracts beyond the reasonable protection of the members.
The defendant union has created a situation where its members have a virtual monopoly of employment as magazine mailers. A monopoly raises duties which may be enforced against the possessors of the monopoly. This has been recognized from the earliest times. The rule that one who pursued a common calling was obliged to serve all comers on reasonable terms, seems to have been based on the fact that innkeepers, carriers, farriers, and the like, were few, and each had a virtual monopoly in his neighborhood. 17 Harv. Law R. 156. A monopoly is under a common law duty to charge only reasonable rates. Allnut v. Inglis, 12East 527. The result is the same whether the situation arises from a monopoly granted by law or "from the circumstance that the strategical position of a group is such as to enable it to impose its will in matters of price upon those who sell, buy or consume." Tyson Bros. v. Banton, 273 U.S. 418, 541;47 S.Ct. 426.
The question presented in the instant case is not one of prices or of serving the public but one of employment — the right of a man to sell his own labor. However, the principle is the same; the holders of the monopoly must not exercise *Page 351 
their power in an arbitrary, unreasonable manner so as to bring injury to others. The nature of the monopoly determines the nature of the duty.
Everyone must be left free to pursue his lawful calling; that is fundamental. It seems to me necessarily to follow that the union must either surrender its monopoly or else admit to membership all qualified persons who desire to carry on the trade of magazine mailers. Otherwise such persons are, by the act of the union, deprived of the right to earn a livelihood.
"A union which has an agreement with an employer providing (inter alia) that all the work shall be given to members of the union or that a preference shall be given to members of the union in employing workmen, would open itself to a serious criticism if it refused to admit to membership men qualified to perform the work done by members of the union in question." Shinsky v.O'Neil, 232 Mass. 99; 121 N.E. Rep. 790.
A union may restrict its membership at pleasure; it may, under certain conditions, lawfully contract with employers that all work shall be given to its members. But it cannot do both.
Let an injunction issue restraining defendant from interfering with complainant's employment.