Upon the filing of this bill on December 1st, 1941, an order was advised by the late Vice-Chancellor Buchanan directing the defendants to show cause why the injunctive relief prayed for in the bill should not be granted. I understand that an examination of the affidavits and the remarks of counsel induced the late Vice-Chancellor to believe that the alleged grievances could be readily adjusted by the parties. Evidently a complete abatement of differences did not eventuate.
The complainants are electrical construction workers. They comprise three groups. Some have been members of the defendant local but ceased to be such when they became contractors. A dearth of contracts during the economic depression caused them to again seek membership in the workers' union. Others have lost their membership by inability to pay the requisite dues and initiation fees. Still others, having been journeymen or apprentices, now present themselves for membership as duly qualified construction workers.
Succinctly stated, these complainants assert that the local union monopolizes the electrical construction work available in Mercer and Burlington Counties; that complainants are denied opportunities of employment in this area because they lack membership cards; that there is now an abundance of such construction work in progress; that the defendant local unfairly refuses them admittance into the union. They seek an orderpendente lite requiring the defendant association to reinstate those complainants who were previously deprived of their membership; afford other complainants a reasonable *Page 146 
opportunity to apply and be accepted on equitable terms; and that the defendants be enjoined from any interference with the right of the complainants to pursue their trade.
A reargument was had before me, at which it was represented that the freedom of the complainants to apply for membership in the union and to follow their trade had not been unjustly abridged; that some of the complainants who had forfeited a portion of their initiation fees in the past, insisted that reimbursement or credit be given for the portion paid; that others declined to submit to an examination of their qualifications as electrical workers.
The solicitor for the defendants expressed assurances that the complainants would be afforded an unmolested opportunity to apply for membership in accordance with the rules, regulations and by-laws of the association; that in the circumstances the union and its members would interpose no objection to working with the complainants on any project regardless of the non-membership of the complainants, and that the defendants would not initiate any endeavor to dissuade an employer from engaging the complainants. Again it seemed that the intervention of this court was unnecessary.
Nevertheless, a determination of the order to show cause is now requested. It was held in Mayer v. Journeymen Stonecutters'Association et al., 47 N.J. Eq. 519; 20 Atl. Rep. 492, that our courts do not exercise visitorial powers over voluntary associations or their proceedings, and that this court has no jurisdiction to compel the admission of a person, not elected according to the rules and by-laws, to membership in a voluntary association. This decision has been cited with approval in recent decisions of our highest tribunal. Vide, Cameron v.International, c., Union No. 384, 118 N.J. Eq. 11, 21;176 Atl. Rep. 692; Ace Bus Transportation Co. v. South Hudson, c.,Association, 118 N.J. Eq. 31, 43; 177 Atl. Rep. 360; affirmed,119 N.J. Eq. 37; 180 Atl. Rep. 835.
It is not inappropriate, however, to remark that the right to earn a livelihood is a property right which is guaranteed in our country by the Fifth and Fourteenth Amendments of the Federal Constitution, and by the State Constitution. Cameron v.International, c., Union No. 384, supra; Kingston *Page 147 Trap Rock Co. v. International, c., Local 825; 129 N.J. Eq. 570; 19 Atl. Rep. 2d 661; Bayonne Textile Corp. v.American, c., Silk Workers, 116 N.J. Eq. 146;172 Atl. Rep. 551.
It has been held in this state that although a monopoly of labor opportunity is a permissible objective and realization of a union, unions obtaining such monopolies must be democratic and admit to their membership all those reasonably qualified for their trade. Wilson v. Newspaper, c., Union, 123 N.J. Eq. 347; 197 Atl. Rep. 720; Cf. Harris v. Geier, 112 N.J. Eq. 99;164 Atl. Rep. 50; Shinsky v. O'Neil, 232 Mass. 99;121 N.E. Rep. 790; Williams et al. v. Quill et al., 277 N.Y. 1;12 N.E. Rep. 2d 547; appeal dismissed, 58 S.Ct. 650; L.Ed. 1085.
Otherwise such persons by the act of the union would be deprived of their constitutional right to earn a livelihood.
A voluntary union should be one in which a law abiding individual of good moral character, possessing the essential qualification of his trade, can enter upon compliance with rules and by-laws reasonably appropriate for the stability and usefulness of the association. Autocracy is no less inimical to our American ideals if practiced by many rather than by one. Since 1890 we have regarded labor unions as voluntary associations. Let them in reality continue to be such.
If the union can force a closed shop upon all, or almost all, of the employers of an industry or area, the right to employment will depend upon union membership; and if union membership be refused the workman, he is more totally excluded from the opportunity to labor than he was before union recognition. This problem has been perceived many times by our courts. Mayer v.Journeymen Stonecutters' Association, supra; O'Brien v.Musical Mutual P. and B. Union, 64 N.J. Eq. 525;54 Atl. Rep. 150; Brennan v. United Hatters, 73 N.J. Law 729;65 Atl. Rep. 165; Elkind Sons, Inc., v. Retail Clerks, c., 114 N.J. Eq. 586; 169 Atl. Rep. 494; Wasilewski v. Bakers' Union, Local No.64, 118 N.J. Eq. 349; 179 Atl. Rep. 284; International TicketCo. v. Wendrich, 122 N.J. Eq. 222; 193 Atl. Rep. 808; affirmed,123 N.J. Eq. 172; 196 Atl. Rep. 474; J. Lichtman *Page 148 Sons v. Leather, c., 114 N.J. Eq. 596; 169 Atl. Rep. 498;Lo Bianco v. Cushing, 115 N.J. Eq. 558; 171 Atl. Rep. 778;Blakely Laundry Co. v. Cleaners' and Dyers' Union, 11 N.J. Mis.R. 915; 169 Atl. Rep. 541; Four Plating Co. v. Mako et al.,122 N.J. Eq. 298; 194 Atl. Rep. 53; Baldwin Lumber Co. v. Local No.560; 91 N.J. Eq. 240; 109 Atl. Rep. 147; Heyl v. CulinaryAlliance, Local 611, 126 N.J. Eq. 384; 9 Atl. Rep. 2d 331;Lora Lee Dress Co., Inc., v. International, c., No. 85,127 N.J. Eq. 564; 14 Atl. Rep. 2d 46; reversed, 129 N.J. Eq. 368; 19 Atl. Rep. 2d 659; F.F. East Co. v. UnitedOystermen Union, 128 N.J. Eq. 27; 15 Atl. Rep. 2d 129;reversed, 130 N.J. Eq. 292; 21 Atl. Rep. 2d 799; Wilson v.Newspaper and Deliverers' Union, supra; Kitty Kelly Shoe Corp.
v. United Retail, c., Local 108, 126 N.J. Eq. 374; 9 Atl. Rep.
2d 295; reversed, 126 N.J. Eq. 318; 8 Atl. Rep. 2d767; Harris v. Geier, supra; Bayonne Textile Corp. v.American, c., Silk Workers, supra; Carl Christiansen v. Local680, c., 126 N.J. Eq. 508; 10 Atl. Rep. 2d 168; modified,127 N.J. Eq. 215; 12 Atl. Rep. 2d 170. See, also, 42 YaleL.J. 1244; 6 St. Johns L.R. 272; Teller, Labor Disputes andCollective Bargaining 282; 43 Comm. L.J. 169.
If the characterization of a labor union as a voluntary association becomes in time a mere anachronism, the mere word "voluntary" will not likely preserve the present state of the law.
Again, it is wise to foresee that a change in surrounding circumstances — such as the economic strengths of competing groups — may make the existing law disjointed and an instrument of oppression if strictly adhered to.
It is the peculiar genius and strength of the common law that no decision is state decisis when it has lost its usefulness in our social evolution; it is distinguished, and if times have sufficiently changed, overruled. Judicial opinions do not always preserve the social statics of another generation.
The relief sought by the complainants will not be granted on this preliminary application. A decree will be advised dismissing the present order to show cause, without prejudice and without costs. *Page 149