SELIGMAN, APPELLANT, *v.* THE TOLEDO MOVING PICTURES OPERATORS UNION, LOCAL 228, ET AL., APPELLEES.

(No. 4244—Decided July 17, 1947.)

*Mr. Harry Friberg* and *Mr. M. L. Okun,* for appellant.

*Mr. Edwin J. Lynch,* for appellees.

CONN, J. Plaintiff filed his petition in the Court of Common Pleas for an injunction against defendants, seeking to restrain and enjoin them from interfering

with plaintiff in securing a position as a motion picture machine operator within the jurisdiction of defendant local union and, further, that defendants be required to accord plaintiff all the rights of membership in the defendant union and that he may recover actual and exemplary damages. However, no evidence of pecuniary damage and the amount thereof having been offered by plaintiff and there having been no discussion of same in brief or oral argument, no order can be made in reference thereto and the prayer of the petition for damages is denied.

From the finding and judgment of the Common Pleas Court dismissing plaintiff's petition, he filed his appeal in this court on questions of law and fact, which was submitted here on the transcript of the evidence and proceedings in that court.

The issues in the case are raised on the petition of plaintiff, the answers of defendants containing special and general denials and a second defense of the statute of limitations, and a supplemental petition and reply of plaintiff.

Plaintiff's petition is somewhat verbose and contains much evidentiary matter, but it may be gleaned therefrom that plaintiff was born and reared in Toledo, Ohio, and has resided in that city practically all his life; that The Toledo Moving Picture Machine Operators Union, Local No. 228, referred to herein as local union, was organized about December 15, 1912, under a charter granted by The International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, referred to herein as international alliance; that the local union has a contract with all the motion picture exhibitors in Toledo and vicinity, whereby it has a monopoly over the furnishing and supplying of labor for the operation of moving picture machines; that

the local union has a "complete monopoly over the furnishing and supply of labor for the operation of motion picture machines; that it is impossible for any person qualified to perform the work required in the operation of moving picture projectors to secure a position in the city of Toledo and vicinity without the approval of said local No. 228."

Plaintiff alleges that in 1916 he was employed in Toledo as a moving picture machine operator, with the approval of the local union; that he requested membership in the local union on numerous occasions, but was refused; that in 1920, the local union removed plaintiff from his work in Toledo and in 1921, in order to secure union status and continue to earn a living in Toledo, he became a member of the international alliance and local union No. 598, at Marion, Ohio, and later transferred his membership to local union No. 371, located at Defiance, Ohio; that plaintiff was again employed in Toledo through the local union with some interruptions, until October 22, 1942, when plaintiff was notified by the business agent of the local union that he would no longer be permitted to work as a moving picture machine operator within the jurisdiction of the local union; that no charges of any kind were ever preferred against plaintiff by defendants; and that plaintiff's removal was not caused by any act of plaintiff or his then employer.

It is alleged further that subsequently plaintiff brought to the attention of the international alliance the action taken by the local union; that a representative of the international alliance came to Toledo and met with the executive board of the local union and thereafter, on December 16, 1942, plaintiff was advised by the local union that he should report to the business agent and he would be given work; and that he did so report but was refused employment and has

not been permitted to work in the jurisdiction of the local union since October 22, 1942.

The evidence offered by plaintiff substantially establishes the averments of his petition as above set forth. It appears also from the evidence that plaintiff desired to become a member of the local union and made repeated efforts to obtain such membership, but his efforts were futile; and that the jurisdiction of the local union embraces Toledo and the territory half way to each of the adjacent locals of Monroe, Michigan, and Marion, Ohio.

The evidence discloses also that a representative of the international alliance had several conferences with the officers and executive committee of the local union and that his recommendation that plaintiff be permitted to work in Toledo was accepted and adopted by the local union and thereupon it notified plaintiff that he would be permitted to work in Toledo. However, it appears that the local union failed to give effect to its previous action and plaintiff was not thereafter permitted to work in Toledo as a moving picture machine operator.

At the conclusion of plaintiff's evidence, defendant moved that plaintiff's petition be dismissed "because the evidence discloses that there was no action taken by this plaintiff before the different tribunals of the local and the international alliance, which is a condition precedent to the bringing of any lawsuit in any civil court."

The defense in this case is predicated on the proposition that plaintiff is not entitled to relief in equity because he did not first exhaust his remedies within the organization, as provided by its constitution and bylaws, and centers on the claim that this action was prematurely brought.

The constitution and bylaws of the international al-

liance provide that all charges against a member of the alliance shall be made in writing "in the form of a sworn affidavit" and filed in duplicate with the secretary of the local union. It is provided further that an appeal may be taken, first, from the decision of the local union to the international president of the alliance; second, from the decision of the president to the general executive board; third, from the ruling of the general executive board to the alliance in convention assembled and "the latter body shall be the tribunal of ultimate judgment."

There are further provisions to the effect that all members of the international alliance agree that the decisions of these tribunals shall be conclusive and members consent to be disciplined in the manner provided by the constitution and bylaws "and under no circumstances to resort to the civil courts until all the remedies therein provided shall have been exhausted"; and that charges against an affiliated local union shall be made in writing in the form of an affidavit in duplicate and filed with the international president and appeals may be taken from his decision in the same manner as above provided in cases where charges are made against members of the alliance.

It is provided also that whenever the membership of an affiliated union falls below seven, its charter is automatically revoked, and upon dissolution of a local union the members of such local union "occupy the position of members at large, obligated to observe the laws of this alliance governing individual members."

It is well settled that members of a labor union are bound by the provisions of its constitution and bylaws, for the determination of issues arising within the union, so long as they are reasonable and not in contravention of law, and that the members thereof must con-

form thereto "and must exhaust all remedies within the association and before such regularly constituted tribunals." 24 Ohio Jurisprudence, 632, Section 22; *International Union of Steam & Operating Engineers* v. *Owens*, 119 Ohio St., 94; 162 N. E., 386; 31 American Jurisprudence, 864, Section 66; Restatement of Law of Torts, Section 811; 41 Illinois Law Review, 433; 47 Columbia Law Review, 33, 44; 160 A. L. R., 918, 920.

The judges of this court, sitting by designation, in *Boblitt* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 73 Ohio App., 339, 56 N. E. (2d), 348, recognized this well established principle of law.

In the instant case, the constitution and bylaws of the local union provide that an application for membership must first be approved by five members of the local union signing same, and upon presentation be approved by a vote of at least two-thirds of the members of the local union; and also provides that application for transfer of membership from one local union to another must be approved by a majority of the members of the local union .

As pointed out above, the evidence shows that plaintiff made repeated efforts to become a member of the local union and without success, including requests for transfer card from the Defiance local, which were also refused; that some time shortly thereafter the membership of the Defiance local union had fallen below seven and its charter automatically revoked, and thereupon plaintiff became a member-at-large of the international alliance and has maintained his membership as such in good standing.

On October 22, 1942, when plaintiff was notified that he would no longer be permitted to work within the jurisdiction of the local union, he was not a member of any local union but was a member-at-large in good standing of the international alliance, as stated above.

No charges were filed against plaintiff at this time or later, from which an appeal could be taken by him.

Following the issuance of the order of the local union on October 22, 1942, plaintiff wrote a letter to international alliance, bringing to its attention the action taken by the local union. This communication was acted on by the international alliance and a representative was sent to Toledo, who met with the officers and executive board of the local union and a decision was reached whereby such action was taken by the local union, the effect of which was to revoke the former order and restore plaintiff to his prior status.

It seems quite clear that the international alliance, pursuant to its constitution and bylaws, could have properly ignored plaintiff's complaint by reason of its informality and failure to comply with the constitution and bylaws, and, on the other hand, defendant local union, for the same reason, could have legally refused to participate in any proceeding based upon that complaint. After participating in the proceedings predicated on plaintiff's informal charge, defendant local union had two courses open from which it could choose the procedure it desired to follow. It could have complied with the finding and conclusions or it could have appealed therefrom, pursuant to the constitution and bylaws of the international alliance. It did neither. Under the facts in this case, can the defendant local union now maintain the defense that plaintiff has failed to first seek his remedy within the constitution and bylaws of the international alliance? We think it can not.

Under the law of waiver, "a person may waive all personal rights or privileges to which he is individually entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided the waiver does not constitute a violation of public policy." 40 Ohio Jurisprudence, 1235, Section 3.

Furthermore, the procedure followed, in which the local union voluntarily participated, may be regarded as substantially the equivalent of the formal provisions referred to and, if so, plaintiff's action would not be premature. *Baltimore & Ohio Railroad Co.* v. *Stankard,* 56 Ohio St., 224, 46 N. E., 577.

It appears from the evidence that the local union for a number of years had what is known as "closed shop" agreements with all the moving picture theatres in Toledo and vicinity, excepting two which were "family propositions," and that this situation obtained at the time plaintiff was notified that he would not be permitted to work within the jurisdiction of the local union, and also at the time the petition in this case was filed.

Plaintiff contends that where a union holds a closed shop agreement in its industry, it can not at the same time restrict its membership, for the reason that to do so would be against public policy and would be illegal and void.

We have not been able to find any reported case in this state where this proposition has been considered, and none has been cited. However, there are cases outside Ohio and cited in plaintiff's brief which appear to sustain his contention. Among these are the following: *Wilson* v. *Newspaper & Mail Deliverers Union of New York & Vicinity,* 123 N. J. Eq., 347, 197 A., 720; *James* v. *Marinship Corp.,* 25 Cal. (2d), 721, 155 P. (2d), 329; *Williams* v. *International Boilermakers Union,* 27 Cal. (2d), 586, 165 P. (2d), 903; *Thompson* v. *Moore Drydock Co.,* 27 Cal. (2d), 595, 165 P. (2d), 901.

In the case of *Wilson* v. *Newspaper etc. Union, supra,* the plaintiff Wilson for a number of years had been in the employ of Newark News Dealers Supply Company in its magazine mailing department. Thereafter the company entered into a contract to employ only

members of the union in most branches of its business, including the magazine mailing department. Wilson and three other employees in that department applied for membership in the union and were rejected. Thereafter they were discharged and their places filled by union men. Wilson obtained a review by the union but was finally denied membership solely because "the books of the union were closed to new membership by reason of the fact that many members in good standing of the union were unemployed."

The court held that the "union must either surrender its monopoly or else admit to membership all qualified persons who desired to carry on the trade."

We quote from the opinion of the court in the *Wilson case* the clear and obvious conclusion reached therein, as follows:

"Everyone must be left free to pursue his lawful calling; that is fundamental. It seems to me necessarily to follow that the union must either surrender its monopoly or else admit to membership all qualified persons who desire to carry on the trade of magazine mailers. Otherwise such persons are, by the act of the union, deprived of the right to earn a livelihood.

"* * * *

"A union may restrict its membership at pleasure; it may, under certain conditions, lawfully contract with employers that all work shall be given to its members. But it can not do both."

We adopt and follow this concise statement of the rule and give it application in the instant case.

The right to labor, to follow a chosen trade or occupation, and to earn a livelihood for oneself and those dependent on him, is a property right within the benign protection of the bill of rights of the Ohio Constitution, and of the Constitution of the United States, and the invasion of that right is a legal wrong for which the law provides a remedy.

146

In the instant case, the action taken by the local union, depriving plaintiff of his right to work and have employment in the field where he is trained and learned through years of labor, is arbitrary, unreasonable, violative of plaintiff's constitutional rights and contrary to public policy.

It follows that plaintiff is entitled to an order restraining and enjoining defendant local union from interfering with plaintiff in securing a position and working as a moving picture operator within the city of Toledo and vicinity.

*Judgment for plaintiff.*

STUART and CARPENTER, JJ., concur.