HAVENS v. DETROIT MOTION PICTURE PROJECTIONISTS, INTERNATIONAL ALLIANCE, THEATRICAL STAGE EMPLOYEES AND MOTION PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA.

LABOR RELATIONS—MOTION PICTURE PROJECTIONISTS—AFFILIATE UNION MEMBER—PRIORITIES—EQUALLY DIVIDED COURT.
    Plaintiff, a member of an affiliate union, who was replaced as a projectionist in a theater by a member of the local in whose jurisdiction the theater was located *held*, not entitled to complain of such action by the local union by an equally divided court.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 10, 1953. (Docket No. 20, Calendar No. 45,595.) Decided December 29, 1953.

Bill by Louis G. Havens against Local 199 Detroit Motion Pictures Projectionists, International Alliance, Theatrical Stage Employees and Motion

REFERENCES FOR POINTS IN HEADNOTES
31 Am Jur, Labor §§ 55, 66, 67.
Controversy within labor union regarding seniority rights as subject of litigation in civil courts. 142 ALR 1055.

Picture Machine Operators of the United States and Canada, and others to restrain interference with plaintiff's employment.    Decree for defendants. Plaintiff appeals.    Affirmed by an equally divided court.

*Travis & Warren,* for plaintiff.

*Leonard Simons (Chris M. Youngjohn,* of counsel), for defendants.

ADAMS, J. *(for affirmance).*    Louis G. Havens, plaintiff and appellant, is a moving picture projectionist and a member of Local No. 738 (Allegan) of the International Alliance, Theatrical Stage Employees & Moving Picture Machine Operators of the United States and Canada.    For several years he was employed in Detroit which is within the jurisdiction of Local 199 of the International Alliance, 1 of the defendants and appellees (hereinafter referred to as the local).    Defendants Kinsora, Kennedy, Sullivan and Ruben are officers of the local.

The local has a contract with substantially all of the theaters in the Detroit area to supply them exclusively with moving picture projectionists.    The contract also establishes hours of employment and pay rates.    By assignment of the local, the plaintiff was employed by Wade E. Allen, defendant, owner and operator of the Fine Arts Theatre, until December, 1948, when he was removed from his job by the local.    This action in chancery was brought to restrain the defendants from interfering with plaintiff's employment and for damages for loss of earnings.    After hearing, the trial court concluded that the plaintiff had failed to prove a cause of action and dismissed the bill of complaint.    Plaintiff appeals.

Plaintiff was formerly a resident of Allegan, Michigan, and worked in a theater in that city.    While so

employed, he helped to organize Local 738 of the International Alliance, Theatrical Stage Employees & Moving Picture Machine Operators of the United States and Canada, and became a member of that local. Later he was temporarily employed in Battle Creek and from there went to the city of Detroit in the year 1942 where he sought employment through Local 199.

By requirement of the International Alliance, the local gave priority in available employment to its members. If all members had employment, members of other locals of the International Alliance were assigned to openings and, finally, if neither members nor members of other locals were available, then jobs could be assigned to nonmembers. Under this provision of the International Alliance constitution, plaintiff was assigned jobs from time to time in a number of theaters in the Detroit area. He estimates that he worked at more than 180 theaters during the 6 years following his arrival in Detroit. During that period he paid dues to his local union in Allegan and work assessments to Local 199 at the same rate required of members.

In 1945 he obtained a job at the Fine Arts Theatre in Detroit and continued to work there without interruption until the early part of December, 1948. His earnings were good and it is conceded that his services were in every respect satisfactory to his employer.

In the meantime and during the year 1945, the plaintiff made application for membership in the Detroit local and deposited the required membership fee. The local took no action on his application and, becoming impatient, plaintiff wrote to the president of the International Alliance complaining of the local's failure to act. He requested, however, that the letter be kept confidential and for that reason nothing came of the letter. Later he contacted reporters

of 2 Detroit newspapers, suggested to them that the local was not being properly administered, and urged them to investigate. Apparently the matter was of little interest to the newspapers and it was given no publicity.

On October 25, 1948, he again wrote to the president of the International Alliance complaining of the local's delay in acting on his application for membership. In the letter he said that he was one of a sizable group who had been denied membership in the organization, and concluded with this statement:

"We do not want to turn to other sources to gain our rights but will in case you cannot see fit to correct this situation."

A copy of his letter was transmitted to the local and shortly thereafter the plaintiff was called to appear before an investigating committee that had been directed to act on his application for membership. The plaintiff met with the committee and was questioned briefly with reference to the letter written to the president of the International Alliance. After the meeting the committee recommended that his application be rejected, having in mind, as they later testified, the letter written by the plaintiff to the International Alliance president, his efforts to have the union investigated by the local newspapers, and a letter written by the plaintiff in 1942 to an officer of the International Alliance accusing another official of improper conduct. The recommendation of the investigating committee was promptly presented to a meeting of the local attended by 93 members and upon motion, plaintiff's application was unanimously rejected.

Following the rejection of the application, a motion was adopted to request Local 738 to recall the plaintiff from the jurisdiction of Local 199. Approximately a week later by direction of the local, plain-

tiff was removed from his employment at the Fine Arts Theatre and a member of Local 199 replaced him as projectionist. Two days after that, plaintiff was officially advised by letter of the rejection of his application and his membership fee deposit and working card were returned to him. A working card is issued to a member of a local and must be deposited with the local that has jurisdiction in the area where the member is then working. Without the card in the files of the local union, plaintiff was not eligible for employment. The request to Local 738 that the plaintiff be withdrawn from the jurisdiction of the Detroit local was forwarded to Allegan but that local took no action.

Plaintiff was offered employment within the jurisdiction of his own local in Allegan. He did not accept it. Neither did he ask for further employment as a projectionist in the Detroit area but almost immediately instituted this suit to test the right of the local to remove him from employment at the Fine Arts Theatre. In his bill of complaint he asked that the local and its officers be restrained from denying to him the rights and privileges of members of the local and from interfering with his employment at the Fine Arts Theatre. He further asked that the owner of the Fine Arts Theatre be restrained from denying him employment and that the agreement between the theater and the local be declared null and void. In addition, he asked for money damages for the loss sustained through his removal from employment.

It is the plaintiff's principal contention that the local is a closed membership union in that it arbitrarily refuses to admit new members and that when it entered into an agreement with the theaters in the Detroit area that they would employ as projectionists only those persons assigned by the local, it took from plaintiff and others in a like position the right

to follow their chosen occupation. In other words, plaintiff says that the defendant local has taken from him the privilege of employment in Detroit by combining a closed shop with a closed union.

It is conceded by the parties that a closed shop for moving picture projectionists does exist in the Detroit area. With some 202 theaters in operation as of the time of trial, only 3 theaters were not under contract with the local, and the record indicates that those 3 were probably owner-operated. We think it undisputed, therefore, that no one can obtain employment in the Detroit area as a moving picture projectionist unless he is assigned to that work by the local.

A person's employment or occupation is a property right which is entitled to protection (*Baldwin* v. *Escanaba Liquor Dealers' Association,* 165 Mich 98) and "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the (Fourteenth) Amendment to secure." *Truax* v. *Raich,* 239 US 33 (36 S Ct 7, 60 L ed 131, LRA1916D, 545, Ann Cas 1917B, 283).

If the local has arbitrarily taken from the plaintiff his right to employment through the implement of a closed union, then it has taken from the plaintiff one of his assured and fundamental rights as a citizen.

"If the union can force a closed shop upon all, or almost all, of the employers of an industry or area, the right to employment will depend upon union membership; and if union membership be refused the workman, he is more totally excluded from the opportunity to labor than he was before union recognition. This problem has been perceived many times by our courts." *Carroll* v. *Local 269, International Brotherhood of Electrical Workers,* 133 NJ Eq 144 (31 A2d 223).

It becomes necessary, therefore, to determine whether or not the defendant local is a closed union; a closed union being one which has no reasonable standards or qualifications for membership and which, without cause, arbitrarily denies admission to anyone distasteful to the membership.

The constitution and bylaws of the defendant local set forth the qualifications of a member. He must be a male person at least 21 years of age who has been employed as a moving picture projectionist for not less than 2 years. The constitution of the International Alliance, in addition, requires that each member be a citizen of the United States or Canada and not affiliated with any organization having for its aim or purpose the overthrow of government by force. Upon application for admission to the union, the applicant must answer correctly at least 75% of the questions put to him touching upon his practical and technical qualifications as a moving picture projectionist. The examining board must also inquire into his character. Having completed their inquiry, the board then reports with recommendations to the membership and the application must be approved by at least two-thirds of the members voting at a regularly called union meeting.

Among the rules of conduct set forth in the special laws of the International Alliance are the following:

"(3) No member or local union shall disobey or fail to comply with, or engage in any action or conduct detrimental to, the principles, doctrines, purposes, aims, programs, interests, laws, determinations, decisions, rulings, directives, orders or mandates of this Alliance or any of its duly constituted officers.

"(4) No member or local union shall slander, libel, defame or circulate scurrilous statements concerning this Alliance or any of its officers or any of its local unions or officers thereof."

While it is conceded that the plaintiff is qualified for his employment as a projectionist, it is equally clear that he violated the tenets of the International Alliance and of the local to which he seeks membership when he contacted 2 local newspapers suggesting improprieties in the administration of the union, urging an investigation and the publicizing of its conduct. He was then engaging in action detrimental to the interests of the organization. When he wrote to an officer of another local accusing a union officer of misconduct, which from the record appears to have been unjustified, he was guilty of circulating scurrilous statements concerning an officer of the union. When he wrote to the president of the International Alliance stating that he would have to turn to sources outside of the union to gain his rights, he indicated an intention to act contrary to article 17, § 7, International Alliance constitution, which provides:

"Section 7.   Exhausting internal remedies.

"The members of this Alliance further consent to be disciplined in the manner provided by this constitution and bylaws, and under no circumstances to resort to the civil courts until all the remedies therein provided shall have been exhausted."

All of these circumstances were known and considered by the investigating committee before they acted upon plaintiff's application for membership. Any one of them would have justified expulsion had plaintiff already been a member of the organization. We think it follows that the defendant local, having given consideration to the plaintiff's previous conduct in relation to the International Alliance, was justified in finding him unfit for membership in the local and in recommending that his application be denied.

A union has the right to set up reasonable rules and regulations for the conduct of its members and to expect compliance. Without such rules, a union would not have the unity essential to the purposes for which it exists. It would be unable to attain lawful labor objectives. A local owes the duty to its membership to insist that each member adhere to appropriate rules of conduct established by bylaw and constitution. This right to a reasonable control of its membership and the privilege of excluding those who refuse to abide by such rules have been recognized in the courts of other States where the right to a closed union has been in issue.

"Defendants argue that a union should not be compelled to admit all persons to membership, because some of such persons may have interests inimical to the union and may destroy it from within. The right of the union to reject or expel persons who refuse to abide by any reasonable regulation or lawful policy adopted by the union (*Brown* v. *Lehman* [1940], 141 Pa Super 467 [15 A2d 513]; see 4 Restatement, Torts, comment b to § 810) affords it an effective remedy against such persons." *James* v. *Marinship Corporation,* 25 Cal2d 721, 736 (155 P2d 329, 160 ALR 900).

"Whether or not a labor organization is arbitrarily closed to a particular worker depends, of course, upon the facts of each case, and it is plaintiffs' burden to prove that they are entitled to membership, that membership is closed to them, and that it is arbitrarily closed, since these matters are essential parts of their cause of action under the *Marinship Case.* * * * As recognized in the *Marinship Case,* a union is not compelled to admit all persons as a condition to maintaining closed shop agreements, and it has the 'right * * * to reject or expel persons who refuse to abide by any reasonable regulation or lawful policy adopted by the union.' * * * Clearly a union cannot be said to have acted arbitrarily in withholding

membership from an applicant who does not meet all reasonable requirements or qualifications prescribed by the union as conditions of membership." *Dotson v. International Alliance of Theatrical Stage Employes & Moving Picture Machine Operators,* 34 Cal 2d 362, 369 (210 P2d 5).

Under the circumstances of this case, we are of the opinion that defendant local did not act arbitrarily in denying plaintiff's application for membership and that the local has not been shown to be a closed union.

The further question is presented as to whether plaintiff was improperly removed by the defendant local from his position as a projectionist in the Fine Arts Theatre. Article 19, § 16, of the International Alliance constitution provides:

"Section 16.   Employment of members.

"Affiliated locals are required to insist that all positions within their jurisdiction be filled by their own members. In the event of the local membership being unable to care for all vacancies, preference must be given to members of sister locals affiliated with this Alliance. Not until the available members of the resident and out-of-town locals have been employed shall the engagement of nonmembers be permitted. Any local failing to comply with the requirements of this section shall be fined not less than $50 for each offense."

This section gives priority of right to employment, comparable to seniority, to members of the local having jurisdiction in the area. Plaintiff was replaced in his employment by a member of Local 199.

"By his membership, the plaintiff consented to the manner in which his claim of seniority rights should be disposed of, and he is bound thereby." *Ryan v. New York Central Railroad Co.,* 267 Mich 202, 209.

Plaintiff, having agreed to abide by the constitution of the International Alliance, cannot now com-

plain that the job to which he had been assigned was given to a member of Local 199. His removal from that particular job, however, did not preclude him from the right as a member of an out-of-town local of the International Alliance to demand another position in the Detroit area. At the time there were some 33 nonmembers of the union employed as projectionists and plaintiff, under the provisions of the above-quoted section of the International Alliance constitution, had the right to take the job then held by any of the nonunion members. Plaintiff, however, failed to request such employment. He testified that he made no effort to obtain further employment as a projectionist in either the Detroit or Allegan areas but immediately brought this action.

Had he requested employment from the local and been refused, he would then have had a grievance against the local and would have been entitled, under union rules, to present that grievance to a union tribunal for consideration and decision. If aggrieved by the decision of that tribunal, he was entitled to an appeal under procedure set up in the union constitution. As already stated, in becoming a member of the International Alliance, plaintiff consented to be disciplined in the manner provided in the constitution and bylaws of the union "and under no circumstances to resort to the civil courts until all the remedies therein provided shall have been exhausted."

"Plaintiffs as members of a voluntary association, under the circumstances of this case, were bound by the provisions of the union's constitution and general laws." *Mayo* v. *Great Lakes Greyhound Lines,* 333 Mich 205, 214.

We are of the opinion, therefore, that defendant local was justified under its constitution and bylaws in removing plaintiff from his employment at the

Fine Arts Theatre and replacing him with a local member. Further, that if plaintiff then desired employment as a projectionist in the Detroit area, it was incumbent upon him to demand such employment from the local. Failing to make such demand, he cannot now say that he has been denied employment in violation of his rights as a member of the International Alliance. It follows that because he made no demand for such employment, he is not entitled to damages for loss of earnings.

The decree of the lower court is affirmed, costs to appellees.

DETHMERS, C. J., CARR and SHARPE, JJ., concurred with ADAMS, J.

BUTZEL, J. ( *for reversal*). Almost all of the essential facts of this case are set forth in the opinion of Mr. Justice ADAMS. In showing my reasons for reaching a different conclusion than he did, I find it necessary to repeat and also to add some of the more pertinent facts that lead me to believe that the defendant local was effectuating an arbitrarily closed union policy.

Defendant Wade E. Allen, who also does business as the Fine Arts Theatre, apparently had nothing to do with plaintiff's denial of membership in the Detroit local and was not responsible for plaintiff losing his job at the Fine Arts Theatre. Under his contract with the union, defendant Allen had to obey the orders of the defendant local and replace plaintiff with another man selected by the union. Other defendants, and particularly Local 199, insist that they acted within their rights in whatever they did in refusing membership to plaintiff and returning his card. They claim plaintiff had previous difficulties within an affiliated union many years prior to his employment in the Detroit area. Plaintiff claims that his past actions were not improper in view of

the circumstances. The trial judge paid scant attention to these complaints of what happened at least 6 years prior to the time when plaintiff was denied the right to make a living at his regular trade in the Detroit area.

Defendants complain that plaintiff, after a long period of time elapsed in which he failed to gain membership, contacted 2 newspapermen in Detroit probably with the expectation that they would write of how unfairly he was being treated in his attempt to become a member of the local union. Aside from 1 article that is not included in the record there was no publicity as a result of plaintiff's acts. In his desperation plaintiff also wrote to Congressman Hartley to ascertain whether he could obtain any relief under the Taft-Hartley Act. Plaintiff also wrote 2 letters to the International Alliance president's office complaining of defendant local's inaction in regard to his application.

There can be no question of the right of the defendant Local 199 to enter into a closed shop agreement with employers. The defendant local cannot, however, in the manner herein indicated, prevent plaintiff as a loyal citizen from earning a living at a trade in which he is thoroughly skilled and experienced. *James* v. *Marinship Corporation,* 25 Cal2d 721 (155 P2d 329, 160 ALR 900); *Seligman* v. *Toledo Moving Pictures Operators Union, Local 228,* 88 Ohio App 137 (98 NE2d 54); *Dotson* v. *International Alliance of Theatrical Stage Employes & Moving Picture Machine Operators, Local 162,* 34 Cal2d 362 (210 P2d 5).

Plaintiff joined the International Alliance in 1940 as a charter member of Local 738 of Allegan, Michigan. In 1942, he sought employment in the Detroit area under the jurisdiction of Local 199, defendant. From 1942 to 1945, he worked at irregular jobs relieving members of the local who were ill, on vaca-

tion, or otherwise unavailable for their regular work. This type of work constitutes the "extra board" which consists of a reservoir of men who are more or less substitutes for regular projectionists. Plaintiff worked these irregular jobs for 3 years without complaint. In 1945 he obtained a steady operator's position at the Fine Arts Theatre in Detroit, Michigan, and continued as a regular projectionist at that theater until removed by the defendant local in December, 1948. During the period 1945 to 1948 he also worked extra jobs, when called by the union, without complaint even though the jobs on the "extra board" paid less, involved poorer working conditions, and necessitated an understanding of various types of projection equipment. During the period of employment, 1942 to 1948, plaintiff performed his work skillfully and satisfactorily and was in all respects a good worker and union man. From time to time he assisted in training apprentices and regular members in the operation of projection equipment. During all this period he paid 1–1/2 per cent of his wages to Local 199, as provided by their rules.

It seems clear that plaintiff learned during this period that the established policy of the defendant local prevented members of affiliated locals from transferring membership into the defendant local. The record shows that such was the policy. Therefore, in 1945, plaintiff submitted an application in proper form for a full regular membership in defendant local. This application was submitted with the required fee of $200. Plaintiff had complied with article 21, § 1, of the International Alliance constitution which requires that an applicant be a resident for 18 months within the jurisdiction of the local to which the application is tendered. There seems to be no doubt that plaintiff at this time had complied with the other essential qualifications for membership. At the time of submitting his application, plaintiff had

worked for a period of over 3 years continuously within the jurisdiction of defendant local. This is significant in view of the policy of the International Alliance as expressed in article 19, § 26, of the International Alliance constitution, which reads:

"No local shall be permitted to maintain a 'Junior' or 'Apprentice' upon its rolls in such status for a period of more than 3 years. At the expiration of such time such 'Apprentice' or 'Junior' member shall be balloted upon by the membership of the local union in the manner herein provided, and shall become a full regular member of this Alliance, or shall cease to have any connection therewith, dependent upon the action of the membership of the local union."

In view of this section of the constitution requiring locals of the Alliance to act upon the membership status of a "junior" or "apprentice" immediately at the end of a 3-year period, obviously in order to prevent a continuing and indefinite period of inferior class membership, the plaintiff was justified in expecting an early and, in view of his record within the defendant local, favorable response to his application.

Plaintiff's status in defendant local was that of an inferior associate. His membership in an affiliated local benefited him in only 1 respect, he was assigned work in preference to nonmembers working under the jurisdiction of defendant local. There was little hope of transferring his membership into defendant local because, as defendant Ruben testified, only 1 transfer had been effected in many years and that occurred in 1929. Plaintiff was clearly in an inferior class within defendant local with only an expectation that full membership would some day be accorded him.

Defendant local had not acted upon plaintiff's membership application in 1946, and in fact no action was taken until December, 1948. In 1946, therefore,

plaintiff already was in the position of having met basically all qualifications and prerequisites for membership but no action was taken in response to his application. His position was, indeed, a delicate one. He had the difficult choice of remaining silent and continuing indefinitely in his subservient status, or speaking out and thus supplying the defendant local with a pretext for rejecting his application on the basis of "conduct unbecoming a member" or "trouble making." During this period plaintiff's resentment at not being made a full member began to grow. This resentment was no doubt intensified by seeing others, some of whom plaintiff had trained, gain full membership and acquire seniority rights. In November, 1946, he wrote the first of 2 letters to the International Alliance president complaining of defendant local's failure to grant him membership. It was during this period that plaintiff contacted the 2 Detroit newspapermen concerning the defendant local's membership policies. In October, 1948, plaintiff wrote a second letter to the International Alliance president protesting the inaction of defendant local in regard to his membership application. Both replies from the president's office stressed the autonomy of each local over admitting or accepting transfer of new members. These replies were in conformity with article 2, § 4, of the International Alliance constitution, which provides:

"Each affiliated local union, subject to the laws of this Alliance shall exercise full and complete control over its own membership and affairs. This provision shall not be construed to confer upon local unions the power to enact laws inconsistent with any portion of this constitution and bylaws."

In view of the constitutional provisions of the International Alliance, the letters received by plaintiff from the president's office, and the admissions by

defendants in their answers to plaintiff's bill of complaint, it is clear that defendant local claimed the authority to exclude any one from membership, whether justifiably or arbitrarily, and to designate an applicant as acceptable or undesirable, and that such designation was completely within the power and control of defendant local. In long delaying action upon plaintiff's application and in finally rejecting his application for membership, defendant local was effectuating an arbitrarily closed union policy. Plaintiff was qualified in all respects for membership in the local and had worked more than a reasonable period within its jurisdiction. The requirement that applicant be deemed a person desirable for membership within the local was beyond the objective attainment of plaintiff. This bar was the means by which defendant local claimed the power to arbitrarily reject a fully qualified applicant. The local was not a social or golf club, or a secret fraternal organization.

Plaintiff as a member of an affiliated local had worked more than a reasonable period within the jurisdiction of defendant local. He had performed all reasonable requirements for membership. He had been a resident for 18 months within the local's territory; he had demonstrated his skill as a projectionist and his work was satisfactory to his employers; he had paid all proper assessments; he had trained other members and apprentices; he had worked the less desirable jobs for 3 years and periodically thereafter, at the union's request, while holding a steady job; his honesty and loyalty were unquestioned; his application was in proper form and submitted with the full required fee of $200, which the local deposited but subsequently returned. Plaintiff's resentment at not being made a full member is directly attributable to defendant local's membership policy. If apprentices were entitled to action on membership applications at the end of 3 years, plaintiff, working

in a somewhat comparable status within the defendant local, should have been entitled to equivalent treatment. Defendant local, by pursuing this dilatory policy in regard to plaintiff's application, evidenced an intent to exercise its control over membership in an arbitrary manner. Defendant local admits this arbitrary power to accept or reject an applicant in paragraph 6 of its answer which asserts:

"A favorable vote of at least two-thirds of its members being requisite to admission of any person, however qualified, to membership in such local."

In the case of *James* v. *Marinship Corporation, supra,* 731, the supreme court of California, in declaring the illegality of the combination of a closed shop and a closed union, said:

"In our opinion, an arbitrarily closed or partially closed union is incompatible with a closed shop. Where a union has, as in this case, attained a monopoly of the supply of labor by means of closed-shop agreements and other forms of collective-labor action, such a union occupies a quasi public position similar to that of a public service business and it has certain corresponding obligations. It may no longer claim the 'same freedom from legal restraint enjoyed by golf clubs or fraternal associations. Its asserted right to choose its own members does not merely relate to social relations; it affects the fundamental right to work for a living."

In *Seligman* v. *Toledo Moving Pictures Operators Union, Local 228, supra,* a case similar to the present one, the Ohio court stated:

"The right to labor, to follow a chosen trade or occupation, and to earn a livelihood for oneself and those dependent on him, is a property right within the benign protection of the bill of rights of the Ohio Constitution, and of the Constitution of the United

States, and the invasion of that right is a legal wrong for which the law provides a remedy.

"In the instant case, the action taken by the local union, depriving plaintiff of his right to work and have employment in the field where he is trained and learned through years of labor, is arbitrary, unreasonable, violative of plaintiff's constitutional rights and contrary to public policy."

In *Gompers* v. *Bucks Stove & Range Company,* 221 US 418, 439 (31 S Ct 492, 55 L ed 797, 34 LRA NS 874), Mr. Justice Lamar stated:

"Society itself is an organization and does not object to organizations for social, religious, business and all legal purposes. The law, therefore, recognizes the right of workingmen to unite and to invite others to join their ranks, thereby making available the strength, influence, and power that come from such association. By virtue of this right, powerful labor unions have been organized.

"But the very fact that it is lawful to form these bodies, with multitudes of members, means that they have thereby acquired a vast power, in the presence of which the individual may be helpless. This power, when unlawfully used against one, cannot be met, except by his purchasing peace at the cost of submitting to terms which involve the sacrifice of rights protected by the Constitution; or by standing on such rights and appealing to the preventive powers of a court of equity. When such an appeal is made it is the duty of government to protect the one against the many as well as the many against the one."

It is admitted that unions must have, as a means of self-protection, the right to impose reasonable requirements and qualifications for admission to membership. As stated in *James* v. *Marinship Corporation, supra:*

"Defendants argue that a union should not be compelled to admit all persons to membership, be-

cause some of such persons may have interests inimical to the union and may destroy it from within. The right of the union to reject or expel persons who refuse to abide by any reasonable regulation or lawful policy adopted by the union  *  *  *  affords it an effective remedy against such persons."

But reasonable regulations and qualifications, of necessity embrace admission into the union within reasonable time. Plaintiff is not an apprentice or beginner at his trade; it is conceded that he is a skilled projectionist.

Following the submission of his membership application, plaintiff waited an additional 15 months and then wrote the first letter to the International Alliance president. This was the first manifestation of plaintiff's resentment at the delaying policy carried on by the defendant local. Two years later defendant local decided to give plaintiff "action." At this time plaintiff's resentment at the dilatory policy of defendant local was apparent, and the result of the "action" was evidently predetermined by plaintiff's failure to acquiesce in the local's admission policy. A membership investigating committee briefly interviewed plaintiff. Although few questions were asked, most of the questions pertained to the letters plaintiff had written to the International Alliance president's office. Following this interview, the committee recommended that plaintiff's application be rejected. This recommendation was read during a union meeting that same evening. By voice vote of the 93 members present out of a total membership of 310, plaintiff's application was rejected. This vote, *viva voce,* rather than by ballot as required by the union laws is indicative of the abrupt manner in which plaintiff's application was finally rejected.

The facts set forth above indicate that a discriminatory admission policy prevailed within the de-

fendant local. The action of defendant local in denying membership to plaintiff even though he had complied with the reasonable regulations and qualifications imposed by the union justified the plaintiff in resorting to the courts to protect his right to work.

"A person's occupation or calling, by means of which he earns a livelihood and endeavors to better his condition, and to provide for and support himself and those dependent upon him is property within the meaning of the law, and entitled to protection as such." *Baldwin* v. *Escanaba Liquor Dealers' Association,* 165 Mich 98, 113.

"As a part of the right of acquiring property, there resides in every man the right of making contracts for the purchase and sale of property, and contracts for personal services, which amount to the purchase and sale of labor. It makes little difference whether the right which underlies such contracts of the latter sort is called a personal right or a property right." *Brennan* v. *United Hatters of North America, Local 17,* 73 NJL 729, 742 (65 A 165).

In *Truax* v. *Raich,* 239 US 33, 41 (36 S Ct 7, 60 L ed 131), Mr. Justice Hughes stated:

"It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [14th] Amendment to secure."

The New Jersey courts have stated:

"It is not inappropriate, however, to remark that the right to earn a livelihood is a property right which is guaranteed in our country by the Fifth and Fourteenth Amendments of the Federal Constitution, and by the State Constitution." *Carroll* v. *Local 269, International Brotherhood of Electrical Workers,* 133 NJ Eq 144 (31 A2d 223) following *Cameron* v. *International Alliance of Theatrical*

*Stage Employes and Moving Picture Operators,* 118 NJ Eq 11 (176 A 692, 97 ALR 594).

"The right to labor, to work, or to be employed is property, and as such it merits legal protection. One cannot be deprived of the right to labor by mandate of the legislature, for it is protected by the Fourteenth Amendment to the Constitution of the United States and numerous guaranties of State Constitutions. It is likewise embraced by the Fifth Amendment to the Federal Constitution." 31 Am Jur, p 843.

"The right to pursue any lawful occupation or calling is generally, if not universally, recognized as property within the due process clause of the Federal Constitution. Every man has a natural right to the fruits of his own labor. The right to earn wages is just as much property and within the protection of the due process clause of the Fourteenth Amendment to the Federal Constitution as earned wages." 12 Am Jur, p 353.

See *Howland* v. *Local Union 306, UAW-CIO,* 331 Mich 644, wherein this Court affirmed the verdict and judgment of the lower court awarding plaintiff damages for the acts of defendant union in wrongfully interfering with plaintiff's employment and causing his discharge.

"As a general rule, an action for damages will lie against anyone, including a labor union, its officers, or members, or a former employer who unlawfully prevents one from procuring employment, or who intentionally and without legal justification or excuse procures an employer to discharge his employee, to the damage of the latter. So, if officers of a labor union wrongfully prevent one from obtaining employment, an action will lie against them, and against the union as well if their acts were done in the course of their service and for the benefit of that body." 31 Am Jur, p 844.

4 Restatement, Torts, § 810, states:

"Workers who in concert procure the dismissal of :an employee because he is not a member of a labor union satisfactory to the workers are * * * liable to the employee if, but only if, he desires to be a member of the labor union but membership is not ·open to him on reasonable terms."

Plaintiff is accused of misconduct which it is asserted justified rejection of his application. A letter written by plaintiff in 1942 to an official of another local accused a union officer of misconduct. It is ·evident from the testimony of the recipient of the letter that the contents of the letter were unknown to ·defendant local at the time of rejecting plaintiff's application. Acts of plaintiff in speaking on the floor of 2 other locals, some time in 1942, in order to request assignment to an open job are characterized by defendants as misconduct. It is evident from the testimony that what at the time was open discussion in a union meeting, in defendants' opinion, is now deemed serious misconduct. Defendant Kennedy testified that the plaintiff had a right to speak on the floor of defendant local. It was the past exercise of this right that defendants now characterize as misconduct justifying rejection of plaintiff's application. It appears from the record that the principal grounds asserted by defendant local for rejecting plaintiff's application were the letters to the International Alliance president complaining of the defendant local's membership policy and the intent of the plaintiff, as expressed in the last letter, to resort to the court to secure his rights. These letters seem to have aroused the indignation of the officers of defendant local.

Defendants claim that plaintiff thereby expressed ·an intent to violate article 17, § 7, of the International Alliance constitution which reads:

"The members of this Alliance further consent to be disciplined in the manner provided by this constitution and bylaws, and under no circumstances to resort to the civil courts until all the remedies therein provided shall have been exhausted."

Plaintiff as a member of the International Alliance is bound by the constitution and by-laws of that association. If plaintiff has remedies by way of appeal within the union he must first exhaust those remedies before resorting to the courts. *Harris* v. *Detroit Typographical Union,* 144 Mich 422; *Mayo* v. *Great Lakes Greyhound Lines,* 333 Mich 205. If plaintiff has no remedy by way of appeal under the constitutional provisions of the International Alliance, or if any possible remedy within those provisions is illusory or would in fact be futile, plaintiff is justified in resorting to the court for protection of his rights. *Howland* v. *Local Union 306, UAW-CIO, supra;* annotation, 168 ALR 1462.

Plaintiff's principal ground of complaint is that defendant local acting *within its power* under the International Alliance constitution has illegally deprived him of his right to work on a basis equivalent to that of a full member. At the time of writing the letters to the International Alliance president's office, plaintiff could assert no constitutional provisions violated by defendant local under article 20, § 2 and § 3, of the International Alliance constitution which read:

"Sec. 2—Charges.

"Charges against an affiliated local union for violation of the constitution and bylaws of this Alliance may be preferred by any member, officer, International officer or affiliated local union. Such charges must be in writing setting forth the offense charged and the section of the constitution or bylaws alleged to be violated thereby. Charges must be made in the form of a sworn affidavit and in duplicate.

"Sec. 3—To whom preferred.

"All charges against an affiliated local union shall be preferred to the International president of this Alliance who shall, if the charges are cognizable, appoint a time and place for trial."

Plaintiff could assert no charges invoking the judicial power of the International Alliance president under article 7, § 5:

"Sec. 5—Judicial powers.   *   *   *

"The president shall have original jurisdiction to try all charges against an affiliated local union whether these charges are preferred by an individual member or by another affiliated local union."

Cognizant of local autonomy in regard to membership under article 2, § 4, *supra,* and acting upon advice of the International Alliance president's office, plaintiff could not invoke procedure under article 7, § 6, of the International Alliance constitution, which reads:

"Sec. 6—Interpret constitution and bylaws.   *   *   *

"The International president shall render decisions upon questions of law where the constitution and bylaws contain no express provisions for the determination thereof—his ruling upon such questions shall be made in conformity with the spirit and substance of the constitution and bylaws and with regard to the equities of the circumstances."

Since the International Alliance contained an express provision in regard to local control over membership, this procedure was unavailable to plaintiff. The judicial power of the general executive board could not be invoked under article 11, § 5, since, as stated above, the International Alliance constitution expressly provided for local autonomy in membership matters.  Article 11, § 5, of the International Alliance constitution reads in part:

"Section 5—Judicial powers.

"The general executive board shall act as an appellate tribunal of the Alliance to hear all appeals from decisions of the president of the Alliance in cases of discipline of officers or members. The general executive board shall also entertain appeals from decisions of the president interpreting the laws of the Alliance decisive of matters not provided for by the laws of this Alliance."

No charges had been filed against plaintiff pursuant to article 16 of the constitution, therefore, the appeal procedures set forth in article 17 do not apply. Nor were charges filed against plaintiff pursuant to article 8 of the defendant local's constitution.

Plaintiff although a member of the International Alliance submitted an application for new membership in defendant local. There are no provisions in the International Alliance constitution or in the defendant local's constitution providing for an appeal procedure upon rejection of an application by the local. Plaintiff had no remedy or appeal procedure within the union in regard to the conduct of defendant local in delaying action upon and then arbitrarily rejecting his membership application. The issue of whether plaintiff had an appeal within the union from the subsequent act of defendant local in withdrawing his working card and permitting nonunion members to work while plaintiff was denied the right need not be confused with plaintiff's principal complaint in this case, that defendant local arbitrarily excluded him from the union and thereby deprived him of working privileges equal to those of a full member.

*Seligman* v. *Toledo Moving Pictures Operators Union, Local 228, supra,* differs from the present case in one fundamental respect. Seligman was removed from his job by the local union and denied the right

to work. This removal of Seligman, while permitting nonmembers to work, was in violation of article 19, § 16, of the International Alliance constitution. Seligman asserted this violation in a letter to the International Alliance president's office and then, not having been permitted to work notwithstanding a recommendation to that effect by the president's office, resorted to the courts. In that case Seligman was asserting primarily a violation of the union constitution, and secondarily, the arbitrary exclusion from the union. The Ohio court refused to allow the defense of failure to exhaust remedies within the union because the defendant local in that case had refused to follow the recommendation of the International Alliance president's office on the informal appeal.

In the present case plaintiff is asserting as a primary complaint the long delay and arbitrary rejection of his application for membership. His basic complaint is that defendant local acting within its power under the union constitution can arbitrarily exclude him from full membership and retain him indefinitely in an inferior status similar to that condemned by the New Jersey court in *Cameron* v. *International Alliance of Theatrical Stage Employes and Moving Picture Operators, supra,* and *Collins* v. *International Alliance of Theatrical Stage Employes & Moving Picture Machine Operators,* 119 NJ Eq 230 (182 A 37).

The act of defendant local in returning plaintiff's working card and thereby effectively removing him from his job while at the same time permitting nonunion members to work is a second complaint of plaintiff, and an asserted union constitutional violation as in the *Seligman Case, supra.* To hold that plaintiff, upon demand for employment after being removed from his job, would have had a remedy by way of appeal under the union constitution merely decides that plaintiff must exhaust his union appeal

procedures in order to possibly resume the inferior working status of which he complains.

In *Dotson* v. *International Alliance of Theatrical Stage Employes & Moving Picture Machine Operators, supra,* factually similar to the present case, the California court stated:

"Further, it is clear that defendants cannot satisfy their duties under the *Marinship Case* by offering to resume dispatching plaintiffs to work as outside men because the record shows that giving plaintiffs work in this manner would not be equivalent to granting them full membership in Local 162. As visiting members plaintiffs would have few of the privileges accorded to regular members, for instance, they would not be allowed to vote for officers or upon matters of union policy, and their seniority rights, if existing at all, would not be equal to those of members. Although they would be under the control of the local and would be required to pay the same percentage of their wages as is paid by regular members of the local, they would be kept in an inferior status analogous to that of the auxiliary membership considered in *James* v. *Marinship Corporation,* * * * and the junior membership condemned in *Cameron* v. *International Alliance of Theatrical Stage Employes and Moving Picture Operators,* 118 NJ Eq 11 (176 A 692)."

The significant difference between the present case and the *Dotson Case* is that in the present case plaintiff has claimed substantial compliance with all reasonable qualifications or requirements for admission and has submitted an application for membership to the defendant local. In the *Dotson Case,* plaintiffs had never submitted an application or transfer card and had made no effort to comply with the admitted reasonable requirements for membership; therefore, the court felt justified in reversing the case and requiring that plaintiffs prove compliance with reasonable qualifications for membership. There is no

intimation in the *Dotson Case* that writing to the International Alliance president's office was unreasonable conduct precluding plaintiffs from admission into the union.

Defendant local after rejecting plaintiff's application returned his working card. This was in furtherance of a motion made at the union meeting that the Allegan local be requested to withdraw plaintiff from the jurisdiction of the Detroit local. No charges had been made against plaintiff. He had no hearing. Despite these acts, defendants now insist that plaintiff should have redeposited his working card with the Detroit local and thereby become eligible for work. This would have been an idle gesture on plaintiff's part. Defendants' answer admits that plaintiff was informed that he could no longer be employed within the jurisdiction of defendant local.

Defendants further claim that plaintiff was still a member of the Allegan local and, therefore, could go back there and obtain employment. Plaintiff had been employed in Detroit for 6 years and established a residence there. It is no justification to defendants' actions that plaintiff may have been able to obtain employment within the jurisdiction of the Allegan local where, as the testimony indicates, the wages were much less than in Detroit.

In ruling that the defendant local, as a voluntary association, had the right to withhold membership from plaintiff at its pleasure, the trial court cited *Mayer* v. *Journeymen Stone-Cutters Association*, 47 NJ Eq 519 (20 A 492), and *Greenwood* v. *Building Trades Council of Sacramento, California*, 71 Cal App 159 (233 P 823). These 2 cases decided by the courts of California and New Jersey treating trade unions as pure voluntary associations are today impliedly reversed by the courts of those States. See *Cameron* v. *International Alliance of Theatrical Stage Employes and Moving Picture Operators,*

*supra; Collins* v. *International Alliance of Theatrical Stage Employes & Moving Picture Machine Operators, supra; James* v. *Marinship Corporation, supra; Dotson* v. *International Alliance of Theatrical Stage Employes & Motion Picture Machine Operators, supra.*

As cited above, the California court, in *James* v. *Marinship Corporation, supra,* stated:

"Where a union has, as in this case, attained a monopoly of the supply of labor by means of closed shop agreements and other forms of collective labor action, such a union occupies a quasi public position similar to that of public service business and it has certain corresponding obligations. It may no longer claim the same freedom from legal restraint enjoyed by golf clubs or fraternal associations."

The New Jersey court in *Carroll* v. *Local 269, International Brotherhood of Electrical Workers, supra,* in citing other New Jersey decisions, stated:

"It has been held in this State that although a monopoly of labor opportunity is a permissible labor objective and realization of a union, unions obtaining such monopolies must be democratic and admit to their membership all those reasonably qualified for their trade. * * * Otherwise such persons by the act of the union would be deprived of their constitutional right to earn a livelihood."

The cases cited by the trial judge as authority are, therefore, no longer fully accepted in the States wherein they were decided. As indicated by the later cases in those States, trade unions are today considered as being affected with a public interest. Arbitrary action by such unions when interfering with the fundamental right to earn a living may be remedied by the courts.

Plaintiff asks for damages and in his brief requests that they also include any sustained since the

filing of the bill up to the time final decision is rendered. In *Howland* v. *Local Union 306, UAW-CIO, supra,* in which damages were claimed the case was transferred to the law side of the court when the injunctive relief originally sought was no longer necessary.

A decree should be entered ordering defendant Wade E. Allen, individually and doing business as the Fine Arts Theatre, to restore plaintiff to his position as projectionist at the Fine Arts Theatre, plaintiff upon such restoration to deposit his card from the Allegan local with defendant Local 199, and to pay to it such assessments as were payable heretofore; further, that defendants be enjoined from interfering with plaintiff's employment as a projectionist with any theater in the Detroit area; that defendants be also enjoined from enforcing the closed-shop agreement against theaters in the Detroit area as far as the latter's employment is concerned. This shall be conditioned upon plaintiff's continuous offer to join defendant local and be subject to all reasonable rules and regulations thereof and all disciplinary action, including suspension or expulsion, if such becomes necessary in the event that plaintiff violates such rules and regulations.

The record before us shows no determination of damages, although it is apparent that plaintiff would in no event be entitled to damages from all the defendants. The decree should provide that the prayer of the bill of complaint may be amended so as to include damages, if any, up to the time of the trial by the law side of the court to which the case should be transferred for further proceedings as to damages, and render an appropriate judgment. See *Howland* v. *Local Union 306, UAW-CIO, supra.* Plaintiff should recover costs of both the trial court and this

Court against defendants with the exception of defendant Allen.

BUSHNELL, BOYLES, and REID, JJ., concurred with BUTZEL, J.